T.C. Memo. 2003-91


UNITED STATES TAX COURT


MITCHELL S. WIEST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 256-00.                    Filed March 27, 2003.


Mitchell S. Wiest, pro se.

<u>Martha J. Weber</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GALE, <u>Judge</u>:  This case is before the Court on petitioner's

petition to review respondent's denial of relief under section

6015[1] with respect to petitioner's 1994 taxable year.  We hold

_____

    [1] Unless otherwise noted, all section references are to the
Internal Revenue Code as amended, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

that respondent abused his discretion in denying petitioner relief under section 6015(f).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts and attached exhibits.

At the time of filing of the petition, petitioner resided in Mt. Juliet, Tennessee.

Petitioner and his wife during 1994, Michelle Wiest (Ms. Wiest), filed a joint Federal income tax return for that year (the 1994 return). Ms. Wiest engaged a high school acquaintance employed at a tax return preparer (H & R Block) to prepare the 1994 return and gave the preparer Forms W-2, Wage and Tax Statement, for herself and petitioner. Petitioner had given his Forms W-2 to Ms. Wiest for this purpose.

The 1994 return reflected a balance due of $4,062. After the 1994 return was completed, petitioner and Ms. Wiest signed it. On the 1994 return, petitioner and Ms. Wiest reported wages of $72,138, of which $29,904 was petitioner's and $42,234 was Ms. Wiest's. Petitioner's Federal income tax withholding totaled $2,696, and Ms. Wiest's totaled $1,918.

Ms. Wiest assumed responsibility for having the couple's tax returns prepared and for filing them with respondent. With respect to the 1994 return, after petitioner and Ms. Wiest signed

it, Ms. Wiest assumed responsibility for filing it and did so. However, the $4,062 amount reported as due on the 1994 return was not paid and remained unpaid at the time of trial.

Petitioner gave Ms. Wiest his Forms W-2 for taxable years 1995 and 1996, so that she could have the couple's tax returns for those years prepared by the same acquaintance at H & R Block. Although petitioner believed that Ms. Wiest had filed returns for those years, returns were never filed.

During their marriage, petitioner paid most household expenses, including rent, food, and the majority of the children's expenses, from his earnings.

In September of 1997, petitioner and Ms. Wiest divorced. In the spring of 1998, in connection with filing his return for 1997, petitioner discovered for the first time that Ms. Wiest had not filed income tax returns on his behalf for taxable years 1995 and 1996, and that the liability reported as due on the 1994 return had not been paid. At that time, petitioner filed returns for 1995 and 1996 and paid his outstanding liabilities for those years by refinancing the mortgage on his residence. Petitioner contacted Ms. Wiest at that time and learned that his Forms W-2 for 1995 and 1996, which he had given her for purposes of filing returns for those years, were in the trunk of her automobile.

On March 4, 1999, petitioner filed with respondent Form 8857, Request for Innocent Spouse Relief, with respect to 1994.

Petitioner requested relief on two grounds: (1) That since he was married and raising five children, the correct amount of tax was withheld from his salary, and therefore that the liability reported on the 1994 return arose solely from insufficient withholding on the part of Ms. Wiest; and (2) that he had relied on Ms. Wiest to file the 1994 return and pay the amount shown as due thereon.

On December 10, 1999, respondent issued petitioner a determination letter setting forth his determination that petitioner did not qualify for innocent spouse relief. The determination letter concluded that petitioner did not qualify for relief under section 6015(b) and (c). As to equitable relief under section 6015(f), the determination letter provided that "underpayment was evident at the signing of the joint return. The taxpayer would have had knowledge/reason to know of the underpayment at the time of signing the tax return." A fuller discussion, on a Form 886A, Explanation of Items, attached to the determination letter, provided as follows:

> Marital status--Taxpayers are currently divorced ..as of 9-23-97. Taxpayer husband filed Form 8857 on March 4, 1999.

> Attribution—Taxpayer states he does not remember signing the return. His signature is very identifiable and was compared to that on the return. His signature on return appears good. Therefore, he knew of the underpayment at one time. Agent proportioned balance due with underpayment. The breakdown is that the responsibility of the underpayment is 37% caused by the taxpayer husbands [sic] inadequate withholding and 63%

of [sic] the taxpayer wife's inadequate withholding.

Undue hardship—No known hardship.

\* \* \* \* \* \* \*

Marital abuse—None known.

Spouse's legal obligation to pay—Divorce decree was read over the telephone to Agent. No mention of Internal Revenue Service debt made.

Knowledge/reason to know-Understatement [sic] was evident at the signing of the joint return. Taxpayer husband would have had knowledge/reason to know of the understatement [sic] at the time of signing. Taxpayer husband states he does not remember signing the return. States he would have paid if he had known of the understatement [sic] and cites his paying back taxes for 1995 and 1996 promptly as example.

Significant benefit--No known beyond normal support.

Petitioner timely filed his petition on January 3, 2000.

OPINION

We must decide whether respondent abused his discretion in denying relief under section 6015(f) with respect to an amount of tax reported on petitioner's joint return but not paid. We review respondent's determination for abuse of discretion, <u>Butler v. Commissioner</u>, 114 T.C. 276 (2000), and we hold that respondent abused his discretion because respondent's determination was arbitrary.

Section 6015(f) provides as follows:

Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts

and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner announced factors, first in Notice 98-61, 1998-2 C.B. 756, and later in Rev. Proc. 2000-15, 2000-1 C.B. 447, that the Commissioner will consider in determining whether an individual qualifies for relief under section 6015(f).[2]

Where, as here, the unpaid liability is one that was reported as due on the joint return, the factors that are deemed to weigh in favor of granting relief are: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer hardship if relief is not granted; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse had no knowledge or reason to know that the liability would not be paid;[3] and (5) the nonrequesting spouse has a legal obligation pursuant to a

---

[2] Notice 98-61, 1998-2 C.B. 756, was effective during the period in which petitioner filed his request for relief and respondent issued the determination letter. Notice 98-61 was modified and superseded by Rev. Proc. 2000-15, 2000-1 C.B. 447, effective Jan. 18, 2000. However, the two releases do not differ materially with respect to the factors pertinent to this case.

[3] Although not listed as a factor favoring relief in Notice 98-61, this factor is so listed in Rev. Proc. 2000-15.

divorce decree or agreement to pay the liability. Factors weighing against relief include: (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse had knowledge or reason to know of the unpaid liability; (3) the requesting spouse has significantly benefited (beyond normal support) from the unpaid liability; and (4) the requesting spouse is obligated under a divorce decree or agreement to satisfy the liability. See Notice 98-61, sec. 3.03, supra; see also Rev. Proc. 2000-15, sec. 4.03, 2001-1 C.B. 448. In reviewing respondent's determination, we do not substitute our judgment for his. Rather, we defer to respondent's determination unless it is arbitrary, capricious, or without sound basis in fact. Jonson v. Commissioner, 118 T.C. 106, 125 (2002); Pacific First Fed. Sav. Bank v. Commissioner, 101 T.C. 117, 121 (1993).

In the instant case, petitioner requests relief on two pertinent grounds: That he was unaware that the liability reported on the 1994 return had not been paid, and that the unpaid liability was solely attributable to Ms. Wiest. The determination letter concludes that petitioner knew or had reason to know of the unpaid liability, and that it was partly attributable to petitioner. Based principally on its conclusions as to petitioner's knowledge or reason to know of the unpaid liability and the attribution of the unpaid liability, the

determination letter denied relief under section 6015(f).[4]  We consider whether respondent's determination was an abuse of discretion.

A.  <u>Knowledge or Reason To Know</u>

The determination letter found that petitioner had knowledge or reason to know of the underpayment, based solely on the fact that he signed the 1994 return.[5]  While there is no longer any dispute that petitioner signed the return, as he conceded the signature was his upon seeing the return again in connection with these proceedings, the fact that he signed the return does <u>not</u> establish the actual or constructive knowledge that is relevant in the case of a liability that is reported on a return but not paid.[6]  The relevant knowledge in the case of a reported but unpaid liability, as respondent's own published guidance points out, is whether the taxpayer knew or had reason to know "that the

---

[4] The determination letter in addition considered certain factors supportive of relief (namely, petitioner's divorced status and the fact that there was no known significant benefit from the underpayment beyond normal support), as well as factors weighing against relief (namely, the absence of hardship or marital abuse).  The determination letter also identified a neutral factor; namely, the failure of the couple's divorce decree to address tax debts.

[5] The determination letter states: "His signature on the return appears good.  <u>Therefore</u>, he knew of the underpayment at one time." (Emphasis added.)

[6] If signing a joint return that reports a liability is sufficient to establish actual or constructive knowledge of an underpayment, then no taxpayer signing such a joint return would ever lack knowledge or reason to know of the underpayment.

tax would not be paid" when the return was signed or filed.[7]  See Notice 98-61, sec. 3.03(2)(b); see also Rev. Proc. 2000-15, sec. 4.03(1)(d).  Because the determination letter equated petitioner's signing of the return with actual or constructive knowledge of the underpayment, it failed to consider the relevant question of whether petitioner knew or had reason to know that the tax would not be paid.  Consequently, the determination letter's conclusion that petitioner knew or had reason to know of the underpayment was arbitrary and without sound basis in fact. We proceed to consider, "taking into account all the facts and circumstances", section 6015(f)(1), whether petitioner knew or had reason to know that the tax shown as due on the 1994 return would not be paid.

Petitioner gave credible testimony at trial.  He testified that Ms. Wiest had assumed responsibility for having the 1994 return prepared and filed, and that he turned over his Forms W-2 to her for that purpose.  The testimony of the preparer of the 1994 return corroborates petitioner's testimony.  The preparer testified that she was a high school acquaintance of Ms. Wiest, not petitioner, and that it was Ms. Wiest who provided her with

_____

[7] Rev. Proc. 2000-15 revises Notice 98-61 with respect to the time when it is relevant whether the taxpayer knew a tax would not be paid.  Rev. Proc. 2000-15 provides that the relevant time is when the return is "signed", whereas Notice 98-61 provides that it is when the return is "filed".  We do not believe this distinction is material in this case.

the materials and information necessary to prepare the 1994 return. Clearly petitioner relied on Ms. Wiest to file the 1994 return, and it was in fact filed. Moreover, petitioner's prompt action in 1998 to satisfy his 1995 and 1996 liabilities, upon learning that Ms. Wiest had failed to file the couple's returns for those years, together with his testimony, persuades us that petitioner had no <u>actual</u> knowledge, prior to 1998, of his outstanding tax delinquencies, including the unpaid liability for 1994.

The question remains whether he had reason to know; that is, as respondent's guidance puts it, whether "it was reasonable for * * * [petitioner] to believe that the nonrequesting spouse would pay the reported liability". Notice 98-61, sec. 3.02(3); see also Rev. Proc. 2000-15, sec. 4.02(1)(b). The determination letter failed to make this inquiry, and the facts developed at trial are sketchy. Although conceding that he signed it, petitioner does not recall the circumstances of signing the 1994 return. Ms. Wiest had assumed responsibility for having the return filed. Although petitioner did not recall any specific assurances from Ms. Wiest that she would pay the $4,062 reported as due on the 1994 return, her wages in that year were substantially more than his, and her withholdings were substantially less. Moreover, we discern a pattern of deception on Ms. Wiest's part with respect to the 1995 and 1996 tax years;

that is, petitioner also gave her his Forms W-2 for those years based on her assumption of responsibility for filing, and the Forms subsequently were found in the trunk of her car after the delinquencies had been discovered. Given that Ms. Wiest engaged in deception with respect to filing returns for 1995 and 1996, there is reason to believe that she engaged in deception with respect to 1994 as well. We conclude, based on all the facts and circumstances, that it was reasonable for petitioner to believe that Ms. Wiest would pay the liability reported on the 1994 return. Accordingly, he did not have knowledge or reason to know that the tax would not be paid. To the extent respondent's determination to deny relief was based on this factor, it is unsupported.

B. Attribution

A second factor asserted by petitioner in his request for relief was that the unpaid liability was entirely attributable to Ms. Wiest. In his request for relief, petitioner contended that he was raising five children in 1994 and that consequently his withholdings were sufficient to cover his share of the 1994 tax. With respect to this contention, the determination letter provided:

> Agent proportioned the balance due with underpayment.
> The breakdown is that the responsibility of the
> underpayment is 37% caused by the taxpayer husbands
> [sic] inadequate withholding and 63% of [sic] the
> taxpayer wife's inadequate withholding.

Thus, respondent's denial of relief was based in part on his determination that approximately 37 percent of the underpayment was attributable to petitioner. As discussed below, respondent's conclusion concerning petitioner's share of the unpaid liability was arbitrary and without sound basis in fact.

The determination letter contains no explanation of the computation underlying the conclusion that petitioner's share of the underpayment was 37 percent. It is likewise silent regarding the issue of petitioner's entitlement to claim exemptions for dependents. In his posttrial brief, respondent takes the position that the determination letter's calculation of petitioner's share of the unpaid tax liability was based upon a computation of his tax liability as if he had filed for 1994 using a status of married filing separately. According to respondent, petitioner's hypothetical tax liability for 1994 so computed would have been $4,327, which, after reduction for his $2,696 withholdings, would have left an unpaid liability of $1,631--or approximately 40 percent of the actual unpaid liability ($4,062) for 1994.[8]

Respondent's comparison of petitioner's hypothetical liability as a married-filing-separately taxpayer, as reduced by his actual withholdings, to the actual unpaid liability on his

---

[8] Respondent offers no explanation for the discrepancy between his 40-percent computation on brief and the revenue agent's 37-percent computation in the determination letter.

joint return for 1994, does not produce a meaningful ratio. In making the computation, respondent allowed petitioner a single personal exemption and no exemption for any dependent. The 1994 return claimed five dependency exemptions, which claim was accepted by respondent and is reflected in the actual 1994 liability. Obviously, the allowance of five dependency exemptions reduced the actual 1994 liability. However, in denying petitioner any benefit from the dependency exemptions in computing his hypothetical separate liability, respondent has produced a hypothetical liability that is necessarily inflated in comparison to the actual 1994 liability. Although petitioner raised the issue of the five dependents in his request for relief, and testified at trial that he provided more than half of their support in 1994, respondent never addressed the contention in the determination letter or in his posttrial brief. Respondent instead has simply treated petitioner as entitled to no adjustment with respect to dependency exemptions in calculating petitioner's share of the unpaid liability. Since the unpaid liability reflects an allowance for five dependency exemptions, respondent's calculation--which effectively allocates the allowance for the five dependency exemptions to Ms. Wiest --necessarily inflates petitioner's share of the unpaid liability in comparison to Ms. Wiest's. Respondent has offered no argument or evidence to support the allocation of the five dependency

exemptions to Ms. Wiest, in the face of petitioner's claim that he was providing over half the children's support.  In this circumstance, respondent's calculation is arbitrary and without sound basis in fact, as is his conclusion that the 1994 unpaid liability is 37 percent (or 40 percent) attributable to petitioner.

Because respondent's computation of the share of the unpaid liability attributable to petitioner was arbitrary, we shall consider attribution based on the record before us.  We believe a computation of petitioner's and Ms. Wiest's respective shares of the 1994 underpayment is mostly straightforward.  Since they each reported only wage income and jointly claimed the standard deduction and their two personal exemptions, each spouse's share of reported gross income would, in the absence of other factors, equal his or her share of the total liability.  Each spouse's withholdings could then be compared with his or her share of the total liability to derive their respective shares of the underpayment.

A complicating factor arises with respect to the five dependency exemptions claimed on the 1994 return.  Respondent's acceptance of the 1994 return establishes the entitlement of petitioner and Ms. Wiest, jointly, to five dependency exemptions.  Although petitioner contends that he was providing more than half the support of the five children claimed as dependents on the

1994 return, we find his bare assertions, without any other support, an insufficient basis on which to attempt an allocation of the five dependency exemptions to him, especially in light of the fact that Ms. Wiest had income of $42,234, as compared to his income of $29,904, in 1994. If no allocation is attempted, the benefit of the five exemptions is effectively split equally between petitioner and Ms. Wiest, since the total liability for 1994 reflects the benefit of the dependency exemptions claimed on the return and accepted. In the circumstances of this case, splitting the benefit of the five dependency exemptions equally is appropriate.

Using the foregoing principles, petitioner's and Ms. Wiest's respective shares of the underpayment could fairly be apportioned as follows. The gross income of $72,138 reported on the 1994 return consisted of petitioner's wages of $29,904 and Ms. Wiest's wages of $42,234. The reported total tax liability was $8,675. Petitioner's share of the total tax liability was $3,596 (($29,904 ÷ $72,138) x $8,675), and Ms. Wiest's was $5,079 (($42,234 ÷ $72,138) x $8,675). Petitioner's share of the underpayment equals his share of the total liability ($3,596) less his withholdings ($2,696), or $900. The remaining portion of the underpayment ($3,162) is attributable to Ms. Wiest. We therefore reject petitioner's contention that the underpayment is entirely attributable to Ms. Wiest, as well as respondent's

finding that it was 37 or 40 percent attributable to petitioner, and conclude that petitioner's share of the underpayment was $900, or approximately 22 percent.

C. Other factors

The determination letter also considered other factors, albeit briefly. With respect to economic hardship, the determination letter concludes that there is "no known" hardship, notwithstanding petitioner's assertions in his claim for relief that he had to refinance the mortgage on his residence in order to pay his 1995 and 1996 liabilities. Nonetheless, the record before us does not establish that petitioner would suffer hardship if required to pay the 1994 liability. Accordingly, this factor weighs against relief. Respondent concedes and we agree that petitioner's status as divorced from Ms. Wiest weighs in petitioner's favor. The determination letter did not find that petitioner had significantly benefited (beyond normal support) from the underpayment and the evidence persuades us that he did not benefit at all. Accordingly, this factor does not weigh against relief. Finally, there is no evidence of spousal abuse or that the divorce decree imposed a legal obligation on either spouse regarding the unpaid liability, rendering these factors neutral in this case.

D.  Conclusion

Respondent's determination to deny petitioner relief under section 6015(f) was principally based on his findings that petitioner knew or had reason to know that the liability would not be paid, and that approximately 40 percent of the unpaid liability was attributable to petitioner.  Since each of these findings was arbitrary and without sound basis in fact, we conclude that respondent's denial of any relief was an abuse of discretion.

Based on our review of all the facts and circumstances, we conclude that there are several factors favoring relief. Petitioner did not know, and had no reason to know, that the liability would not be paid; the underpayment is only attributable to petitioner to the extent of $900; petitioner and Ms. Wiest are divorced; and petitioner did not benefit from the underpayment.  Weighing against relief is the absence of any showing of hardship if relief is not granted and the fact that a portion of the underpayment is attributable to petitioner.  On balance, we find that the factors favoring relief, to the extent that the underpayment is not attributable to petitioner, outweigh the factors supporting a denial of relief.  Therefore, we hold that petitioner is entitled to relief under section 6015(f) with respect to $3,162 of the underpayment; that is, he is entitled to relief with respect to all of the underpayment except the $900

thereof that we find is attributable to him.  To reflect the foregoing,

<u>An appropriate decision will be entered</u>.