T.C. Memo. 2003-201

UNITED STATES TAX COURT

MARC S. FELDMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14326-01.                    Filed July 10, 2003.

Stephen C. Mancini, for petitioner.

Elaine T. Fuller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability for 1996 and 1997 with respect to joint returns filed with his former spouse, Lauren Trevino (Ms. Trevino).  The issue for decision is

whether respondent abused his discretion in denying petitioner relief from joint and several liability under section 6015(f).

Unless otherwise indicated, all section references are to the Internal Revenue Code.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition in this case was filed, petitioner resided in California.

Petitioner is an attorney licensed to practice law in California. Around 1993, petitioner became a named partner in the law firm of Koletsky, Mancini, Feldman & Morrow (law firm) in Los Angeles, specializing in insurance defense. Petitioner's draw from the law firm was $16,000 per week in 1996 and $18,000 per week in 1997.

Petitioner's Marriage to Ms. Trevino and Personal Finances

Petitioner and Ms. Trevino were married on March 4, 1990, and had three children during their marriage. The children were born in 1993, 1995, and 1996. When petitioner became a partner in the law firm, Ms. Trevino became responsible for the family finances due to petitioner's increased work responsibilities. Generally, petitioner would sign his paycheck and turn it over to Ms. Trevino, who would pay the family's bills and expenses.

Ms. Trevino gave petitioner cash to spend. During 1996 and 1997, Ms. Trevino was not employed outside the home.

Beginning in January 1997, petitioner requested bank statements and documents from Ms. Trevino to show where his income was placed and what investments were made. They met almost weekly for about 15 to 30 minutes to discuss their finances. Around the same time, petitioner requested that Ms. Trevino purchase shares of stock in particular companies. Subsequently, petitioner requested an accounting of which stocks were purchased. Ms. Trevino provided to petitioner a handwritten ledger sheet accounting for the family's investments. Ms. Trevino also provided handwritten ledger sheets to show petitioner the amounts held in their various bank accounts. Additionally, Ms. Trevino provided photocopied bank statements from several financial institutions with varying account balances. The bank statements were altered, reflected obvious inconsistencies, and had dates printed in an irregular form.

In late July 1997, petitioner's law firm was experiencing financial difficulties. At that time, petitioner was managing partner of the law firm. Petitioner engaged Sanwa Bank to provide a line of credit to the law firm, using his personal bank accounts as collateral on the loan. He collected statements from the joint bank accounts to substantiate his income to Sanwa Bank.

Petitioner discovered that the bank accounts were either closed or had minimal balances.

Petitioner and Ms. Trevino separated on September 20, 1997, and Ms. Trevino filed a Petition for Dissolution of Marriage in the Superior Court of the State of California, for the County of Los Angeles.  On August 23, 1999, a Judgment for Dissolution was entered in the marriage dissolution proceeding.  On July 11, 2000, a Stipulated Further Judgment of Dissolution of Marriage was filed in the Superior Court with respect to the division of property.  Petitioner was required by court order to pay spousal and child support to Ms. Trevino.  By agreement between them, Ms. Trevino has been reimbursing petitioner for child support at the rate of $1,000 per month.

Petitioner's Federal Returns

In April 1997, petitioner and Ms. Trevino filed a joint Form 1040, U.S. Individual Income Tax Return, for 1996 reporting adjusted gross income of $762,751 and taxable income of $573,117. The return showed tax due of $228,143, with estimated tax payments of $153,500, and remaining tax due of $74,643. Ms. Trevino told petitioner that the return was prepared by a certified public accountant.  The Form 1040 and the attached schedules filed for 1996 were published by the IRS and intended for use for the 1995 tax year.  The return reported that two of their children lived with petitioner and Ms. Trevino for "42" and

"22" months, respectively, during 1996. Additionally, their third child's name was handwritten whereas the other names were typed; their third child was born in 1996 and would not have been listed on their 1995 return. Their total exemptions were typed as "4" and their third child was not included in that number. On the date the return was due, petitioner signed the return and wrote a check for the amount shown as due. The check was presented to the bank against insufficient funds.

In April 1998, petitioner and Ms. Trevino filed a joint Form 1040 for 1997 reporting adjusted gross income of $454,227 and taxable income of $280,876. The return showed tax due of $119,595, an estimated tax penalty of $6,443, and total amount due of $126,038. At the time of filing, no estimated payments towards the 1997 tax liability were reported. Petitioner submitted a check with the return in the amount of $500 towards the 1997 liability.

Respondent's Examination and Petitioner's Request for Relief

On November 20, 1998, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief, for the 1996 and 1997 liabilities. Petitioner filed for relief no later than 2 years after the IRS initiated collection activity. From July 22, 1998, through April 15, 1999, petitioner made payments totaling $14,603.35 towards the 1996 liability.

On February 26, 1999, the IRS proposed adjustments to petitioner and Ms. Trevino's 1996 tax liability for underreported interest and rental income.  Petitioner paid the proposed adjustments on March 5, 1999.  On March 5, 1999, petitioner also agreed to a proposed adjustment to the 1997 liability, increasing total taxable income.  Respondent adjusted the charitable contribution amount claimed in petitioner and Ms. Trevino's itemized deductions.  Petitioner signed the audit report on March 5, 1999, and Ms. Trevino signed it on April 2, 1999.  On May 6, 1999, respondent determined that petitioner's 1996 and 1997 income tax liabilities were then currently uncollectible.  On September 16, 1999, petitioner signed an audit report agreeing to additional adjustments to the 1996 return.  On October 1, 1999, Ms. Trevino signed the report.

On October 29, 1999, the IRS denied petitioner's request for relief from joint and several liability.  Attached to the denial letter was a Form 886A, Explanation of Items.  Relief was denied because the tax liability was attributable to petitioner's partnership income and there was insufficient evidence to show that petitioner would suffer economic hardship if not relieved from the liability.  On November 23, 1999, petitioner protested the denial of relief and requested review by the Appeals Office.  On October 31, 2001, the Appeals Office sent a Notice of Determination Concerning Your Request for Relief from Joint and

Several Liability Under Section 6015 to petitioner denying requested relief under sections 6015(b), (c), and (f). On June 25, 2001, respondent reversed his determination that petitioner's 1996 and 1997 income tax liabilities were uncollectible.

At the time of trial in January 2003, petitioner was receiving a partnership draw from the law firm in the amount of $2,500 per week or $130,000 per year.

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). A spouse (requesting spouse) may, however, seek relief from joint and several liability by following procedures established in section 6015. Sec. 6015(a). A requesting spouse may request relief from liability under section 6015(b) or, if eligible, may allocate liability according to provisions under section 6015(c). Sec. 6015(a). If relief is not available under section 6015(b) or (c), an individual may seek equitable relief under section 6015(f). Section 6015(f) gives respondent the discretion to grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax".

Petitioner concedes that he is not eligible for relief under section 6015(b) or (c).  Petitioner has instead requested equitable relief under section 6015(f).  Except as otherwise provided in section 6015, petitioner bears the burden of proof. Alt v. Commissioner, 119 T.C. 306, 311 (2002); Jonson v. Commissioner, 118 T.C. 106, 113 (2002).  We review the determination to deny relief under an abuse of discretion standard.  See Washington v. Commissioner, 120 T.C. 137, 146 (2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 291-292 (2000).  Petitioner must show that respondent's actions in denying relief were arbitrary, capricious, or without sound basis in fact.  Jonson v. Commissioner, supra at 125.

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a taxpayer qualifies for relief from joint and several liability.  These procedures are set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447.  This Court has upheld the use of these procedures in reviewing a negative determination.  See Washington v. Commissioner, supra at 147; Jonson v. Commissioner, supra at 125.  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists seven conditions (threshold conditions) that must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Respondent concedes that petitioner satisfies the seven threshold conditions

required for relief.  If the threshold conditions are satisfied, Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, lists circumstances where relief will generally be granted, subject to two limitations.  If it is unclear whether these circumstances are satisfied, the Commissioner looks to Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, to determine whether the taxpayer should be granted equitable relief.

Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448, lists the following six factors that the Commissioner will consider as weighing in favor of granting relief for an unpaid liability (positive factors):  (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know that the reported liability would be unpaid at the time the return was signed; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability; and (6) the unpaid liability is attributable to the nonrequesting spouse.  Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, lists the following six factors that the Commissioner will consider as weighing against granting relief for an unpaid liability (negative factors):  (1) The unpaid liability is attributable to the requesting spouse; (2) the

requesting spouse knew or had reason to know that the reported liability would be unpaid at the time the return was signed; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability. No single factor is determinative, and the list is not exhaustive. See Washington v. Commissioner, supra at 148; Jonson v. Commissioner, supra at 125.

Respondent argues that petitioner is not eligible for relief because the negative factors in favor of not granting relief under section 6015(f) outweigh the positive factors in favor of relief. Specifically, respondent contends that petitioner would not suffer economic hardship absent relief and that the tax liabilities are attributable to his income. Respondent further argues that petitioner's claim that he did not know or had no reason to know that the tax liabilities stated on the return would not be paid upon filing is not credible.

Economic Hardship

Economic hardship is determined based on rules similar to those under section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

The regulation provides that the Commissioner will consider any information provided by the taxpayer that is relevant to the determination, including, but not limited to, the taxpayer's age, ability to earn, responsibility for dependents, and the amount reasonably necessary for basic living expenses.  See id.

Petitioner argues, without relevant authority or persuasive reason, that respondent bears the burden of negating petitioner's economic hardship claim and that respondent must conduct an independent investigation into petitioner's financial affairs. Respondent argues that an attorney drawing $130,000 a year from his law firm has sufficient income to meet basic living expenses. Petitioner did not provide evidence of hardship during respondent's decisionmaking process.  At trial, petitioner submitted only his own testimony, in response to leading questions from his counsel, as to certain of his monthly expenses.  His listed outlays include tax liabilities for prior years as well as alimony to Ms. Trevino.  Petitioner also asserts that his monthly expenses include payments on a debt to American Express in excess of $100,000.  Petitioner did not provide bills, bank statements, or other evidence to corroborate his testimony. He did not provide financial information for his current spouse. It is unclear whether his outlays are reasonable living expenses or are simply debts for his prior lifestyle.  Overall, petitioner's situation is totally dissimilar from other

requesting spouses, who were living at or near poverty level at the time of their request and who proved that they would suffer economic hardship without relief from joint and several liability.  See, e.g., Washington v. Commissioner, 120 T.C. 137 (2003); cf. Collier v. Commissioner, T.C. Memo. 2002-144.  On the record in this case, petitioner has failed to show that respondent's determination regarding economic hardship was an abuse of discretion.

Attribution to Nonrequesting Spouse

Under Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, section 6015(f) relief will ordinarily be granted where the requesting spouse is no longer married to the nonrequesting spouse; the requesting spouse would suffer economic hardship; and the requesting spouse, at the time the return was signed, had no knowledge or reason to know that the tax would not be paid. Relief is limited to the extent that the unpaid liability is allocable to the nonrequesting spouse.  In addition, one of the positive factors in Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, weighing in favor of relief is that the liability is attributable solely to the nonrequesting spouse.

Petitioner concedes that he earned the income that gave rise to the liabilities from which he now seeks relief.  Petitioner claims, however, that the unpaid liability is attributable to Ms. Trevino because she was responsible for the family finances

and she represented that she made the estimated tax payments. Petitioner further argues that "equity demands that the tax deficiency not be attributable to a spouse who does not know or have reason to know that the other spouse misused funds intended to pay a reported tax". Respondent argues, and we agree, that the liability is allocable to petitioner because he earned the income reported on the returns for both 1996 and 1997. Cf. Wiest v. Commissioner, T.C. Memo. 2003-91. Petitioner's remaining arguments regarding attribution focus on his purported lack of knowledge of the unpaid liability.

Knowledge of Unpaid Liability

Under Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, the relevant knowledge in the case of a reported but unpaid liability is whether the taxpayer knew or had reason to know "that the tax would not be paid" when the return was signed or filed. Further, a taxpayer has a "duty of inquiry" to determine the amount of his or her tax liabilities. See Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court; Butler v. Commissioner, 114 T.C. 276, 284 (2000).

Petitioner testified that Ms. Trevino told him that the 1996 return was prepared by an accountant. Yet, there are several obvious errors on the face of the return that should have been discovered, even after a cursory review. It appears that the 1996 return was an altered copy of a 1995 return. On its face,

the 1996 return was irregular, and petitioner should have known that further inquiry was necessary to determine the validity of the return.

Despite the events that occurred between petitioner and Ms. Trevino during 1997, petitioner chose to file a joint return for that year. (Petitioner testified that an accountant recommended that petitioner file a joint return for 1997. It was this same accountant who recommended that petitioner file a request for relief from joint and several liability just a few months after filing the 1997 return.) At the time the 1997 return was filed, petitioner was aware that no estimated tax payments had been made on the 1997 liabilities and that only a $500 payment was made at the time of filing. Petitioner thus had actual knowledge of the unpaid liabilities for 1997 at the time the return was filed.

It also appears that petitioner knew of facts that should have made him inquire further into his family's financial situation. Petitioner asserted in his trial memorandum that Ms. Trevino was suffering from a deteriorating mental condition, beginning in September 1996. He became suspicious enough at the start of 1997 to request a financial accounting from Ms. Trevino, but he now claims that he still relied on his wife. He explained in his testimony:

>     MR. FELDMAN: * * * For some reason I made all of this money and I was, all of a sudden it started right

> after the new year in January of 1997, I wanted to know where it was. I wanted to follow up with it.
>
> I--and because this was more money than I ever made in my entire life. So I wanted to try and find out where it was.
>
> Obviously, I didn't do a good job. I missed things. But it was because of, that I was making a vast amount of money and I wanted to know where it was, Your Honor.
>
> And perhaps I should have started sooner, but that's where I started right after the new year in January of 1997.

Both of the joint returns in issue here were filed subsequent to the inquiries he described. Petitioner stated on brief that "he chose not to" handle the family's financial affairs. This choice does not relieve petitioner of the duty to investigate blatant factual inconsistencies in the materials provided to him. Petitioner testified that he never requested original bank statements from Ms. Trevino or from the banks directly. Petitioner alleged in the petition that Ms. Trevino offered photocopied bank statements because, she said, the banks would not provide originals for accounts with such large balances. Petitioner was satisfied receiving photocopies of bank statements that were filled with obvious errors. All of the materials that petitioner presented at trial as evidence of Ms. Trevino's alleged misrepresentation were highly suspect and would put a reasonable person on notice that further inquiry was needed.

Based on the facts and circumstances in this case, many of the factors in Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, are neutral.  The negative factors discussed above outweigh the positive factors in favor of relief.  Petitioner has not shown that he will suffer economic hardship if relief is denied. Petitioner had constructive knowledge that the liability would not be paid for 1996 and had actual knowledge that it was not paid in 1997.  The liability for each year is attributed solely to him because he is the spouse who earned the income in each year.

We have considered the arguments of the parties not specifically addressed in this opinion.  They are either without merit or irrelevant to our decision.  We hold that it was not an abuse of discretion to deny petitioner's claim for equitable relief under section 6015(f).

<u>Decision will be entered</u>

<u>for respondent</u>.