T.C. Memo. 2004-261


UNITED STATES TAX COURT


MARY A. GEORGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2380-03.                    Filed November 16, 2004.


Mary A. George, pro se.

<u>Brianna J. Basaraba</u>, for respondent.


MEMORANDUM OPINION


WELLS, <u>Judge</u>:  Respondent determined that petitioner was not
entitled to equitable relief pursuant to section 6015(f) for
petitioner's 1994, 1995, 1996, 1997, 1998, and 1999 tax years.[1]
The issue to be decided is whether respondent's denial of

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

petitioner's request for equitable relief pursuant to section 6015(f) was an abuse of discretion.

The parties have submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time of filing her petition, petitioner resided in Atlanta, Georgia.

During the years in issue, petitioner was married to James George. Both petitioner and Mr. George held master's degrees. Petitioner was employed as a school teacher, and Mr. George was employed by Georgia Power Company. In addition to his regular employment, Mr. George entered a business venture in 1998 to build and sell single-family homes.

Petitioner and Mr. George failed to timely file income tax returns for 1994, 1995, 1996, 1997, and 1998. Mr. George, however, periodically told petitioner that he had timely filed the tax returns for those years and had paid the related tax liabilities, and respondent concedes that petitioner believed Mr. George had done so.

Mr. George died in October of 1999, and petitioner was appointed to represent Mr. George's estate. While assembling financial records of the estate, petitioner discovered that tax returns for 1994 through 1998 had not been filed. Therefore,

petitioner hired an accountant to prepare such returns.  Joint returns for 1994, 1995, 1996, and 1997 were signed by petitioner on March 14, 2000, and received by respondent on March 21, 2000, and a joint return for 1998 was signed by petitioner on March 14, 2000, and received by respondent on March 20, 2000.  The accountant also prepared a joint return for 1999, which petitioner timely filed.  The foregoing joint tax returns, collectively referred to as the returns, showed the following amounts due for the respective years:

| Tax Year | Tax Liability |
|----------|---------------|
| 1994 | $8,119 |
| 1995 | 7,862 |
| 1996 | 10,037 |
| 1997 | [1]4,447 |
| 1998 | 19,488 |
| 1999 | 3,740 |

[1]Respondent subsequently corrected a math error and increased the balance due for 1997 to $4,873.

No portion of the amounts shown as due on the returns was paid at the time of filing.

Respondent assessed petitioner's Federal income taxes based on the returns.  The sum of tax, penalties, and interest assessed against petitioner for the years in issue exceeds $115,000.

Respondent received from petitioner a Form 8857, Request for Innocent Spouse Relief, and respondent denied that claim for relief.  Subsequently, respondent denied a request for reconsideration of respondent's prior decision and forwarded the

request to respondent's Appeals Office.  Respondent's Appeals Office issued petitioner a Notice of Determination Concerning Request for Relief Under the Equitable Relief Provisions of Section 6015(f), again denying the requested relief.

We must decide whether respondent's denial of petitioner's request for equitable relief pursuant to section 6015(f) was an abuse of discretion.  Under limited circumstances, a spouse may qualify for relief from joint and several liability pursuant to section 6015.

In the instant case, petitioner reported the tax due but failed to make timely payment.  Petitioner's tax liability, therefore, arises from neither an understatement nor a deficiency.  Based on the foregoing, petitioner concedes that relief is unavailable under either section 6015(b) or (c).

Section 6015(f) authorizes the Secretary to relieve taxpayers of joint and several liability where holding the taxpayer liable would be inequitable and relief is unavailable under subsections (b) and (c):

Sec. 6015(f).  Equitable relief.--

Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency * * * and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

Pursuant to the discretionary authority granted in section 6015(f), respondent has prescribed procedures, set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447, for determining whether a spouse qualifies for equitable relief from joint and several liability. We have previously applied Rev. Proc. 2000-15, supra, in considering equitable relief requests pursuant to section 6015(f). See, e.g., Jonson v. Commissioner, 118 T.C. 106, 125-126 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). The record demonstrates that respondent applied Rev. Proc. 2000-15, supra, to evaluate petitioner's application for equitable relief in the instant case.

We review respondent's denial of petitioner's claim for equitable relief pursuant to section 6015(f) for abuse of discretion. Butler v. Commissioner, 114 T.C. 276, 291-292 (2000). Consequently, we decide in the instant case whether respondent acted arbitrarily, capriciously, or without sound basis in fact in denying the requested relief. Jonson v. Commissioner, supra at 125. Petitioner bears the burden of proof as to whether respondent's denial of such relief was an abuse of discretion. See Rule 142(a). We are not limited to matters contained in respondent's administrative record when deciding the issue. Ewing v. Commissioner, 122 T.C. 32, 35-44 (2004).

Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, sets

forth seven threshold conditions[2] that must be satisfied before

---

[2]Section 4.   General Conditions for Relief

.01 Eligibility to be considered for equitable relief.  All the following threshold conditions must be satisfied before the Service will consider a request for equitable relief under § 6015(f).  * * *  The threshold conditions are as follows:

(1) The requesting spouse filed a joint return for the taxable year for which relief is sought;

(2) Relief is not available to the requesting spouse under § 6015(b) or 6015(c);

(3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse;

(4) Except as provided in the next sentence, the liability remains unpaid.  A requesting spouse is eligible to be considered for relief in the form of a refund of liabilities for: (a) amounts paid on or after July 22, 1998, and on or before April 15, 1999; and (b) installment payments, made after July 22, 1998, pursuant to an installment agreement entered into with the Service and with respect to which an individual is not in default, that are made after the claim for relief is requested;

(5) No assets were transferred between the spouses filing the joint return as part of a fraudulent scheme by such spouses;

(6) There were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse.  If there were disqualified assets transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent that the liability exceeds the value of such disqualified assets.  For this purpose, the term "disqualified asset" has the meaning given such term by § 6015(c)(4)(B); and

(continued...)

the Secretary will consider any request for equitable relief pursuant to section 6015(f). In the instant case, respondent concedes that petitioner satisfied the seven threshold conditions.

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, provides that equitable relief will ordinarily be granted if the seven threshold conditions and each of the following three elements (collectively referred to hereinafter as the three elements) are satisfied:

> (a) At the time relief is requested, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date relief was requested [the first element];

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. If a requesting spouse would otherwise qualify for relief under this section, except for the fact that the requesting spouse had no knowledge or reason to know of only a portion of the unpaid liability, then the requesting spouse may be granted relief only to the extent that the liability is attributable to such portion [the second element]; and

> (c) The requesting spouse will suffer economic hardship if relief is not granted. For purposes of this section, the determination of whether a requesting

---

²(...continued)
(7) The requesting spouse did not file the return with fraudulent intent.

spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in § 301.6343-1(b)(4) of the Regulations on Procedure and Administration [the third element].

Respondent concedes that petitioner satisfied the first element because Mr. George was deceased at the time petitioner requested relief. The parties, however, dispute whether petitioner satisfied the second and third elements.

The second element is satisfied if the requesting spouse did not know or have reason to know when the requesting spouse signed the returns that the taxes would not be paid. Accordingly, petitioner must establish that it was reasonable for her to believe that Mr. George would pay the reported liability.

Petitioner contends that she did not know or have reason to know when she signed the returns in 2000 that the taxes would not be paid because she believed that Mr. George had settled the tax liability prior to his death. Petitioner further contends that she believed that, even if Mr. George did not make the tax payments as he had claimed, losses related to Mr. George's business venture of building and selling single-family homes might have offset any taxable income. Because Mr. George's records were incomplete, petitioner contends that she had no way of knowing the extent of any such losses.

Although petitioner signed the tax returns in 2000 with each return showing an amount due, petitioner cites Wiest v.

Commissioner, T.C. Memo. 2003-91, in support of the proposition that a taxpayer's signature on a tax return submitted without payment does not constitute constructive knowledge by such taxpayer of an underpayment. Petitioner contends that she did not review the returns before signing them and that her signature merely illustrates her knowledge that the returns needed to be filed as soon as possible, as instructed by her accountant.

Petitioner's contention is without merit. Petitioner had reason to know at the time she signed the returns in 2000 that taxes were due. By signing the joint returns, petitioner is charged with constructive knowledge of the amounts shown on the returns as tax due. Castle v. Commissioner, T.C. Memo. 2002-142. Failure to review the returns prior to signing does not relieve petitioner of responsibility for the stated liability. See id.

Additionally, petitioner knew or had reason to know that the tax liabilities reported in 2000 on her tax returns would not be paid. In that regard, petitioner's reliance on Wiest v. Commissioner, supra, is misplaced. In Wiest, we held that the spouse requesting relief could reasonably have expected the nonrequesting spouse to pay the tax liability where the nonrequesting spouse had already assumed responsibility for preparing and filing the return. In the instant case, however, after discovering that the returns for 1994 through 1998 had not been filed, petitioner did not rely on her spouse to either

prepare or file the joint returns. On the contrary, petitioner had access to the couple's records and directed the preparation of the joint returns prior to her signing them. Because Mr. George was deceased at the time petitioner signed the returns in 2000, petitioner at that time could not have relied on her spouse to pay the liability. Furthermore, as the personal representative of Mr. George's estate, petitioner had reason to know that the liability had not been paid by the estate of Mr. George.

After petitioner already had learned that Mr. George's statements to her with regard to his filing the returns were false, petitioner could not have reasonably relied on statements made by Mr. George that he had paid the tax liabilities. Petitioner had significant education and access to the couple's financial records. Additionally, petitioner could have but apparently did not inquire with respondent as to whether Mr. George had in fact made estimated tax payments.

Based on the foregoing, we believe that petitioner knew or had reason to know that the liability would not be paid.

The third element is satisfied if the requesting spouse will suffer economic hardship if relief is not granted. The Secretary is directed to base the determination of whether a requesting

spouse will suffer economic hardship on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs.[3]

---

[3](4) Economic hardship.

(i) General rule. * * * This condition applies if satisfaction * * * will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses. The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer. Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.

(ii) Information from taxpayer. In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including --

(A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

(continued...)

Petitioner contends that she will suffer economic hardship if she is not granted relief pursuant to section 6015(f). Respondent received from petitioner a questionnaire, Form 886-A, in which petitioner reported that she was employed as a teacher, with an annual salary of approximately $48,000.[4]  Petitioner also reported on Form 886-A approximately $1,000 of annual income from dividends and interest.[5]  Petitioner reported her current monthly income on her Form 886-A as $3,500 and her current monthly

---

[3](...continued)
    (iii) Good faith requirement.  In addition, in order to obtain a release of a levy under this subparagraph, the taxpayer must act in good faith.  Examples of failure to act in good faith include, but are not limited to, falsifying financial information, inflating actual expenses or costs, or failing to make full disclosure of assets.

[4]The Dekalb County Board of Education reported the following compensation to petitioner on Form W-2, Wage and Tax Statement (W-2), for each of the years in question:

| | |
|---|---|
| 1994 | $39,128.29 |
| 1995 | 41,969.06 |
| 1996 | 43,429.00 |
| 1997 | 44,947.00 |
| 1998 | 47,823.60 |
| 1999 | 48,572.22 |

[5]On her joint returns for the years in question, petitioner reported the following dividend and interest income:

| | Dividend Income | Interest Income |
|---|---|---|
| 1994 | $811 | $144 |
| 1995 | 589 | 92 |
| 1996 | 1,272 | 1,500 |
| 1997 | 1,406 | 2,372 |
| 1998 | 1,011 | 32,591 |
| 1999 | 1,476 | 2,991 |

expenses as $3,775.  Petitioner's stated monthly expenses included the following:

#### Monthly Expenses

| | |
|---|---:|
| Mortgage payments | $1,250 |
| Utilities | 375 |
| Food | 400 |
| Clothing | 150 |
| Vehicle | 250 |
| Entertainment | 200 |
| Insurance | 150 |
| Charity | 500 |
| Gifts, travel, miscellaneous | 500 |
| Total | 3,775 |

Petitioner notes that her situation has changed in several respects since she submitted the Form 886-A.  Petitioner is no longer employed.[6]  In lieu of the annual salary reported on the Form 886-A, petitioner has received a monthly pension of $2,000 since her retirement.  Petitioner also states that she paid off a second mortgage on her home.

On June 3, 2003, petitioner provided respondent with documentation regarding her assets.  Petitioner disclosed to respondent a net worth of $315,000, including a $25,000 checking account, a $250,000 IRA, and $45,000 of equity in her home. Petitioner contends that full payment of the tax liabilities would require a distribution of approximately $210,000 from her IRA account, leaving a balance of approximately $100,000.

---

[6]Petitioner states in petitioner's brief that she is considering a resumption of her teaching career.

We conclude that satisfaction of the tax liabilities in issue will not cause petitioner to be unable to pay reasonable basic living expenses. Although petitioner may not be currently employed, she states in her brief that she is considering a return to the workforce to resume her teaching career.[7] Petitioner is well educated, and she has posited no reason why she could not be expected to earn income comparable to her 1999 salary of $48,572. Also, petitioner's reasonable basic living expenses are significantly less than the $3,775 listed on petitioner's Form 886-A. In the absence of more detailed itemization, we do not consider her monthly expenses of $200 for entertainment, $500 for charity, and $500 for gifts and travel to be basic living expenses. Furthermore, petitioner's mortgage payments have presumably been reduced since petitioner paid off the second mortgage on her home.

Even if petitioner were to be unable to resume her employment, we believe that petitioner could liquidate a portion of the IRA inherited from Mr. George in order to pay her tax liabilities without causing her to be unable to pay reasonable basic living expenses. The IRA provides petitioner with a payment source independent of her compensation and retirement pension.

_____

[7]Petitioner's brief states that she is 55 years old.

Therefore, we conclude that petitioner would not suffer economic hardship if relief were not granted.

Because petitioner does not satisfy each of the three elements, petitioner does not qualify for relief pursuant to Rev. Proc. 2000-15, sec. 4.02.

Where the seven threshold conditions are satisfied but relief is unavailable because the three elements are not satisfied, the Secretary is authorized to grant relief if it would be inequitable under the facts and circumstances to hold the requesting spouse liable for the unpaid liability (hereinafter, the facts and circumstances test).  Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.  The facts and circumstances test provides a partial list of positive and negative factors to be taken into account in determining whether to grant relief under section 6015(f).

The facts and circumstances test provides the following positive factors weighing in favor of relief:

> (1) Factors weighing in favor of relief.  The factors weighing in favor of relief include, but are not limited to, the following:

>> (a) Marital status.  The requesting spouse is separated (whether legally separated or living apart) or divorced from the nonrequesting spouse [the marital status positive factor].

>> (b) Economic hardship.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure)

if relief from the liability is not granted [the economic hardship positive factor].

(c) Abuse.  The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress [the abuse positive factor].

(d) No knowledge or reason to know.  In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid [the knowledge positive factor].

(e) Nonrequesting spouse's legal obligation. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability [the nonrequesting spouse's legal obligation positive factor].

(f) Attributable to nonrequesting spouse. The liability for which relief is sought is solely attributable to the nonrequesting spouse [the liability attribution positive factor].

As to the marital status positive factor, petitioner's marital status weighs in favor of relief because Mr. George was deceased at the time petitioner sought equitable relief.  The economic hardship positive factor does not weigh in favor of relief.  As stated above, we do not believe that petitioner would suffer economic hardship if relief from the tax liabilities were not granted.  The abuse positive factor does not weigh in favor of relief.  On her Form 886-A, petitioner conceded that marital abuse does not apply.

The knowledge positive factor does not weigh in favor of relief.  As stated above, we believe that petitioner knew or had

reason to know at the time of filing the tax returns in 2000 that the tax liabilities would not be paid.

The nonrequesting spouse's legal obligation positive factor does not weigh in favor of relief. On her Form 886-A, petitioner stated that neither petitioner nor Mr. George entered into any enforceable agreements related to the payment of the tax liabilities.

The liability attribution positive factor does not weigh in favor of relief. Petitioner concedes that the liability for which relief is sought is not solely attributable to Mr. George.

The facts and circumstances test provides the following negative factors weighing against relief:

> (2) Factors weighing against relief. The factors weighing against relief include, but are not limited to, the following:
>
>> (a) Attributable to the requesting spouse. The unpaid liability or item giving rise to the deficiency is attributable to the requesting spouse [the liability attribution negative factor].
>>
>> (b) Knowledge, or reason to know. A requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed [the knowledge negative factor]. This is an extremely strong factor weighing against relief. Nonetheless, when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid, and in very limited situations where the requesting spouse knew or had reason to know of an item giving rise to a deficiency.

(c) Significant benefit.  The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * * [the significant benefit negative factor].

(d) Lack of economic hardship.  The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted [the lack of economic hardship negative factor].

(e) Noncompliance with federal income laws.  The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates [the tax law noncompliance negative factor].

(f) Requesting spouse's legal obligation.  The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability [the requesting spouse's legal obligation negative factor].  [Rev. Proc. 2000-15, sec. 4.03.]

Regarding the liability attribution negative factor, petitioner contends that the majority of the unpaid liability is attributable to Mr. George.  In a letter to respondent dated July 27, 2001, petitioner's representative stated that the aggregate tax liability for the 6 years at issue should be allocated as follows:

|  | Mr. George | Petitioner | Combined |
| --- | --- | --- | --- |
| Tax | $38,819 | $13,382 | $52,201 |
| Pen./Int. | 30,761 | 12,127 | 42,888 |
| Total | 69,580 | 25,509 | 95,089 |

Petitioner further contends that, if she had filed separate rather than joint returns, her unpaid liability would total only

$7,500 for the 6 years in question.[8]  We conclude that petitioner's contention has no merit because petitioner filed <u>joint</u> returns with Mr. George, and we must base our decision on the actual facts of the instant case.  Consequently, because a significant portion of the unpaid liability is attributable to petitioner, the liability attribution negative factor weighs against relief.

The knowledge negative factor weighs against relief.  As noted above, we believe that petitioner knew or had reason to know that the reported liabilities would be unpaid at the time petitioner signed the returns.

The significant benefit negative factor weighs against relief.  "Significant benefit" for purposes of section 6015(b)(1)(D) is defined in section 1.6015-2(d), Income Tax Regs.:

> (d) Inequity.  All of the facts and circumstances are considered in determining whether it is inequitable to hold a requesting spouse jointly and severally liable for an understatement.  One relevant factor for this purpose is whether the requesting spouse significantly benefitted, directly or indirectly, from the understatement.  A significant benefit is any benefit in excess of normal support.  Evidence of direct or indirect benefit may consist of transfers of property or rights to property, including transfers that may be received several years after the year of the understatement.  Thus, for example, if a requesting spouse receives property (including life insurance

---

[8]Petitioner reaches this amount by subtracting withholding of $3,750 from $4,250 of estimated annual tax liability and adding penalties and interest.

proceeds) from the nonrequesting spouse that is beyond normal support and traceable to items omitted from gross income that are attributable to the nonrequesting spouse, the requesting spouse will be considered to have received significant benefit from those items.[9]
* * *

Petitioner contends that the only benefit she received from the understatement was the estimated $750 tax for which she would have been liable if she had filed separate rather than joint tax returns. We, however, do not believe that petitioner's estimated $750 annual benefit approximates the actual benefit she received because petitioner filed <u>joint</u> returns. Furthermore, petitioner concedes that she received from Mr. George a pension of $250,000 (converted by petitioner into an IRA) and life insurance proceeds

---

[9]Rev. Proc. 2000-15, 2000-1 C.B. 447, references sec. 1.6013-5(b), Income Tax Regs., for an explanation of "significant benefit". Sec. 1.6013-5(b), Income Tax Regs., effective at the time Rev. Proc. 2000-15, 2000-1 C.B. at 447, was published but subsequently replaced, is substantially similar to sec. 1.6015-2(d), Income Tax Regs., which is currently in effect. Sec. 1.6013-5(b), Income Tax Regs., provided:

normal support is not a significant "benefit" * * *. Evidence of direct or indirect benefit may consist of transfers of property, including transfers which may be received several years after the year in which the omitted item of income should have been included in gross income. Thus, for example, if a person seeking relief receives from his spouse an inheritance of property or life insurance proceeds which are traceable to items omitted from gross income by his spouse, that person will be considered to have benefitted from those items. Other factors which may also be taken into account, if the situation warrants, include the fact that the person seeking relief has been deserted by his spouse or the fact that he has been divorced or separated from such spouse.

of $150,000.  Petitioner could have used, but did not, these resources to pay the liabilities.  Moreover, we note that, had Mr. George paid the joint liabilities during his lifetime, the funds petitioner received from Mr. George at his death would have been reduced by those payments.  Consequently, petitioner received a significant benefit beyond normal support.

The lack of economic hardship negative factor weighs against relief.  As noted above, we do not believe that petitioner will experience economic hardship if relief is not granted.

The tax law noncompliance negative factor weighs against relief.  The record indicates that petitioner had not filed tax returns for 2000 or 2001 as of April 20, 2002.

The requesting spouse's legal obligation negative factor does not weigh against relief.  As noted above, petitioner did not enter an agreement with Mr. George with regard to payment of the liability.

Taking into account all the facts and circumstances, we conclude that it would not be inequitable to hold petitioner liable for the unpaid liability.  Petitioner has not carried her burden to establish that respondent's denial of equitable relief pursuant to section 6015(f) was an abuse of discretion.[10]  We have considered all of petitioner's arguments and contentions

---

[10]That the facts of the instant case were fully stipulated does not relieve petitioner of the burden of proof.  Rule 149(b).

which are not discussed herein, and we find them to be without merit or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.