T.C. Memo. 2005-220

UNITED STATES TAX COURT

ELEANOR SIMON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20258-04.          Filed September 21, 2005.

<u>Jeffrey A. Collins</u>, for petitioner.

<u>Steven M. Webster</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case arises from a request for equitable relief (relief) under section 6015(f)[1] with respect to petitioner's taxable year 1998.  We must decide whether respondent abused respondent's discretion in denying petitioner such relief. We hold that respondent did not abuse respondent's discretion.

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Greensboro, North Carolina, at the time she filed the petition.

Petitioner and Javester Simon (Mr. Simon), both college graduates, married on or about May 20, 1966, separated on or about March 5, 1999, and divorced on June 25, 2001. The judgment of divorce granting petitioner and Mr. Simon a divorce did not impose any obligation on petitioner or Mr. Simon to pay any outstanding Federal income or other tax liabilities. Nor is there any other document relating to that divorce, such as a property settlement, that imposed any legal obligation on petitioner or Mr. Simon to pay any such liabilities. Although petitioner and Mr. Simon divorced in June 2001, division of the marital assets remains to be adjudicated by the North Carolina courts.

During 1998, the year at issue, petitioner worked for Guilford Technical Community College (Guilford College), and Mr. Simon worked for Roadway Express, Inc. (Roadway Express). During that year, petitioner and Mr. Simon received wages of $34,681.20 and $58,016.49, respectively.

Petitioner and Mr. Simon signed on April 15, 1999, and filed the signature form of Form 1040PC Format, U.S. Individual Income

Tax Return, for taxable year 1998 (1998 return).[2]  In the 1998 return, they reported total wages of $92,697, total interest of $56, a retirement plan distribution of $40,420, total income of $133,173, total tax of $28,730, total tax payments of $16,658, and tax due of $12,443.  Petitioner and Mr. Simon attached to the 1998 return (1) Forms W-2, Wage and Tax Statement, for 1998 that reported their respective wages of $34,681.20 and $58,016.49 and respective Federal income tax (tax) withheld of $4,014.04 and $9,114.06 and (2) Form 1099R, Distributions From Pensions, Annuities, Retirement, or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 1998 that reported a fully taxable gross retirement plan distribution of $40,419.71 to Mr. Simon (Mr. Simon's 1998 retirement plan distribution) by First Union National Bank, First Union IRA Department (First Union) and tax withheld of $3,529.70.  The following jurat appeared immediately above the respective signatures of petitioner and Mr. Simon on the 1998 return and immediately below, inter alia, the $12,443 of tax shown due in that return:  "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

---

[2]Robert L. Schroll signed the 1998 return as return preparer.

Petitioner and Mr. Simon did not remit with the 1998 return any payment of the tax shown due.

On January 9, 2002, petitioner filed with the Internal Revenue Service (IRS) Form 8857, Request for Innocent Spouse Relief (petitioner's Form 8857), with respect to taxable year 1998.[3] At the request of the IRS, petitioner completed and submitted to the IRS Form 886-A, Innocent Spouse Questionnaire (petitioner's Form 886-A). In petitioner's Form 886-A, petitioner provided the responses indicated to the following questions with respect to the filing of the 1998 return:

> 2. If you are requesting relief from tax reported on the original return:
>
> a. Did you review the tax return before signing it?
>
> I did not have an opportunity to review the return. My former husband--that [sic] the last minute--insisted that I sign the return immediately so that he could mail the return before the deadline.
>
> b. At the time you signed the return, were you aware there was a balance due IRS? Please explain in detail.
>
> No, I was not aware of any balance due because I was not afforded the opportunity to review the return.

---

[3]In petitioner's Form 8857, petitioner also sought relief under sec. 6015 with respect to taxable year 1997 in which Mr. Simon received a retirement plan distribution of $47,632.36 from Roadway Express Savings Plan (Mr. Simon's 1997 retirement plan distribution). The IRS granted petitioner partial relief with respect to 1997, and that year is not at issue in the instant case. See infra note 4.

    c.  Describe how, at the time you signed the return,
    you and your spouse planned to pay the tax due?

        I was unaware of any taxes due because I did not
        know that he had taken funds from his retirement.

    d.  Why did you file a joint return instead of
    married filing separate?

        We filed a joint return for thirty-three years
        while living as husband and wife.

In petitioner's Form 886-A, petitioner also alleged the following

with respect to the filing of the 1998 return:

    My former husband customarily had our return completed
    by H&R Block.  The additional [retirement] income was
    reported.  When the form was given to me for my signa-
    ture, my former husband insisted that I sign it quickly
    in order to allow him sufficient time to get to the
    post office.

    In response to questions relating to the preparation of the

1998 return, petitioner alleged in petitioner's Form 886-A that

her only involvement with the preparation of that return was to

give Mr. Simon Form W-2 for 1998 that she received from Guilford

College.  In this connection, petitioner further alleged in

petitioner's Form 886-A that Mr. Simon gathered the information

for the preparation of the 1998 return and delivered it to the

return preparer, that she never accompanied Mr. Simon when he

brought that information to the return preparer, and that Mr.

Simon retrieved the 1998 return from the return preparer after it

was completed.

    In response to questions relating to the existence of any

joint bank accounts, petitioner alleged in petitioner's Form 886-

A that during 1998 she and Mr. Simon had separate, not joint, bank accounts, that she did not review Mr. Simon's checkbook or bank statements, that she did not open mail addressed to Mr. Simon, that she made payments for her automobile, her clothing, and certain unidentified food and furniture, and that Mr. Simon made payments for the mortgage, utilities, insurance, and his clothing.

In response to a question relating to whether petitioner's payment of the tax liability for taxable year 1998 (unpaid 1998 liability) would cause an economic hardship to her, petitioner indicated that it would not. However, petitioner added that "it would be grossly unfair because I received no economic benefit—in fact, I was not aware he withdrew these [retirement] funds".

In response to a question asking for any other information in support of petitioner's position that she is entitled to relief under section 6015 with respect to taxable year 1998, petitioner stated:

> I have remarried since my divorce [from Mr. Simon], and
> this is my reason for saying * * * that if I had to
> pay, it would not create an economic hardship, although
> it would be quite difficult for me. Inasmuch as my
> former husband used the money [the retirement distribu-
> tion] entirely for himself, and kept me totally unaware
> of its existence, I feel it is only fair that he should
> accept the responsibility for paying the tax liability
> he incurred.

In petitioner's Form 886-A, petitioner did not claim that Mr. Simon abused her during their marriage.

In considering petitioner's Form 8857, the IRS found that petitioner made an error in calculating the amount of tax due for taxable year 1998 that was shown in the 1998 return (i.e., $12,443). Respondent determined that the correct amount of tax due for that year is $12,072, of which $10,103 and $1,969 were attributable to Mr. Simon and petitioner, respectively.

On September 9, 2002, the IRS made a preliminary administrative determination (IRS September 9, 2002 preliminary determination) with respect to petitioner's Form 8857. As pertinent here, the IRS September 9, 2002 preliminary determination denied petitioner relief under section 6015 with respect to taxable year 1998.[4] That preliminary determination stated in pertinent part:

> **1998 IRC 6015(f) claim**
> Liability arose on or after July 22, 1998
> Joint return is valid
> There is enough information to determine the claim
> No OIC accepted
>
> **Eligibility factors:**
> Underpayment of tax - relief is not available under IRC 6015(b) & 6015(c)
> Filed a joint return
> Claim filed timely
> Liability unpaid, or paid by the requesting spouse within the time period
> Not a fraudulent return
> No fraudulent transfer of assets
> No disqualified assets transferred
>
> **Tier I factors (full scope):**
> Taxpayers are currently divorced, widowed, legally

---

[4]The IRS September 9, 2002 preliminary determination granted petitioner partial relief under sec. 6015(c) with respect to taxable year 1997. See supra note 3.

separated, or they had been members of separate households prior to the claim for at least 12 consecutive months

Can't prove a belief that tax was to be paid

Explanation: At this time and the previous year he had taken large amounts out of his IRA, this is the main cause of the balance due. She didn't examine the return to see tax was due.

**Tier I factors (full scope) not met**

**Tier II factors:**

Taxpayers are currently divorced, widowed, **For** legally separated, or they had been members of separate households prior to the claim for at least 12 consecutive months

No economic hardship **Against**

Explanation: per claimant

No marital abuse

No legal obligation established

The liability is not solely attributable to **Against** the non-requesting spouse

Erroneous items: see allocation sheet, using the percentage method on the itemized deduction means part is attributable to her.

**Knowledge:**

Background:
  Claimant - college    Spouse - college

Involvement:
  Claimant - she said she    Spouse - paid part of the bills but had no access to his individual accounts

Lifestyle changes: none known

Spouse's elusiveness: she said he took out the money and didn't tell her

Duty to inquire: no review of the return, he said he rushed her and didn't give her time

Living arrangements: she said separated 3-98 but court papers say 5-5-99

The requesting spouse had knowledge or **Against**
reason to know

Explanation:    When the return was filed there had
                been two years of large withdrawls
                from IRA.  She didn't review the
                return.  She didn't do her duty to
                inquire.  Had she reviewed the
                return and saw the IRA withhdrawls
                she would have known something was
                going on.

No significant benefit gained

In compliance with the tax laws

Explanation:    returns were filed; however, she is
                remarried and there is a SSA update
                showing for december of 2001 which
                would mean she should have filed
                married filing separate or joint in
                2001.

Unique circumstances:    none

Not meeting Tier II factors - deny claim

Tier II consideration:   Based on the above facts it is
                equitable to hold the claimant
                liable for the balance.  She
                didn't exam the return or
                question how it would be paid,
                part is attributable to her.
                She should have known there
                was a problem because of large
                IRA withdrawls.
                    **Tier II factors not met -
                    deny claim**

Ending statement:    Tier I factors (full scope) not met
                Tier II factors not met - deny
                claim
                Claim denied under IRC 6015(f) -
                full scope
                    **Claim denied under IRC 6015(f)
                    - full scope**

[Reproduced literally.]

In a letter dated November 6, 2002 (petitioner's November 6,

2002 letter), petitioner appealed to the IRS Appeals Office

(Appeals Office) the IRS September 9, 2002 preliminary determina-

tion to deny her relief under section 6015 with respect to

taxable year 1998.

On September 17, 2003, Mr. Simon sent a letter (Mr. Simon's September 17, 2003 letter) to the IRS. He attached to that letter: (1) Form 1099R for 1997 that reported Mr. Simon's 1997 retirement plan distribution of $47,632.36 as fully taxable and (2) various statements for the period April 9 through April 30, 1997, that First Union prepared and sent to Mr. Simon. Mr. Simon's September 17, 2003 letter stated in pertinent part:

> I'm submitting this information from the tax year 1997 and 1998. It is in regard to the stock certificate I received from Caliber System and rolled over to a qualified IRA. Somehow this information was passed on as cash. The portion that I used in 1997 and 1998 was taxed and a penalty was assessed because I was not 59½ at the time of withdrawal.
>
> The IRS has been holding all my refunds while we have exchanged information. I have received this paperwork from Caliber Systems, Roadway Express, and Wachovia Bank.[5] I hope this information will clear up the misunderstanding.
>
> Also I need you to submit a form to me. I am no longer married and need my divorced wife exempt from this matter. * * * [Reproduced literally.]

On May 18, 2004, the Appeals Office sent a letter to Mr. Simon (Appeals Office May 18, 2004 letter) regarding petitioner's appeal of the IRS September 9, 2002 preliminary determination. The Appeals Office May 18, 2004 letter stated in pertinent part:

---

[5]Although Mr. Simon's September 17, 2003 letter suggested that he was attaching to that letter "paperwork from Caliber Systems, Roadway Express, and Wachovia Bank", the only attachments to that letter that are part of the record in this case are those described above.

Eleanor Collins [petitioner][6] has requested relief from tax liability as an innocent spouse for the tax years shown above.  If the IRS grants relief, this would relieve your spouse, in whole or in part, from having to pay the income tax owed on these years. * * *

Our Examination function denied the request, Eleanor Collins then asked our Appeals function to review the request.

We are contacting you to see if you have any additional information that you'd like to provide.  You may bene-fit from participating in this administrative appeal proceeding, since we'll make our decision based on all the information we receive.  Should Eleanor Collins receive an innocent spouse classification, the tax liability in whole or in part will be yours alone.

I'm available to meet with you in an informal confer-ence if you'd like.  You can present your position at this conference.  You can also participate by sending us material and information that support your position. Because of our time frames in dealing with appeals, I need to hear from you within the next 30 days.

On July 22, 2004, the Appeals Office completed a document

entitled "Appeals Transmittal and Case Memo" (Appeals Office

memorandum) that stated in pertinent part:

### SUMMARY AND RECOMMENDATION

**Does Eleanor M. Simon qualify as an innocent spouse under IRC section 6015 for tax year ending 1998?**

No, the taxpayer does not qualify for relief as an innocent spouse for tax year 1998.  The amount of $10,103 of the $12,072 deficiency is allocable to the Non-requesting Spouse (NRS); however, the Cincinnati Service Center disallowed the claim for relief in full because the taxpayer did not have a belief the tax would be paid in full at the time of signing the joint return.  I sustain their determination.

---

[6]Sometime after petitioner and Mr. Simon divorced, peti-tioner remarried.

\*     \*     \*     \*     \*     \*     \*

## BRIEF BACKGROUND

The taxpayer filed a joint return with her former husband, Javester Simon, for tax year 1998. She alleges she did not have an opportunity to review the return because her husband insisted she sign it immediately so that he could mail it timely.

The taxpayer separated from her husband in 1998 or 1999 and divorced him in June 2001.

The taxpayers filed their 1998 return with an underpayment of $12,443 and included a large IRA distribution on the return for such year.

## DISCUSSION AND ANALYSIS

The taxpayer filed a Request for Innocent Spouse Relief, Form 8857, under IRC section 6015(b), (c) or (f) for 1997 & 1998. Since the Cincinnati Service Center allocated the entire deficiency to the NRS for 1997 and the taxpayer did not request Appeal's consideration for this year, the discussion below is limited to the 1998 tax year.

### IRC § 6015(b)

\*     \*     \*     \*     \*     \*     \*

Does the taxpayer meet the requirements of IRC § 6015(b)?

No, the taxpayer does not qualify for relief under IRC § 6015(b) for tax year 1998. There was no understatement of tax for this year.

### IRC § 6015(c)

\*     \*     \*     \*     \*     \*     \*

Does the taxpayer meet the requirements of IRC § 6015(c)?

No, the taxpayer does not meet the requirements of IRC § 6015(c). There is no deficiency in tax allocable to the non-requesting spouse for 1998. The tax liability

is attributable solely to the underpayment of tax upon filing the tax return, plus interest and penalties.

## IRC § 6015(f)

IRC § 6015(f) provides the IRS with the discretion to grant equitable relief where a taxpayer is not entitled to relief under either IRC § 6015(b) or (c).  Equitable relief under IRC section 6015(f), however, is subject to **two limitations** in accordance with - Revenue Procedure 2000-15, 2000-1 CB 447, Section 4.02:

> If the return has been adjusted to reflect an **understatement**, relief will be available only to the extent of the liability shown on the return **prior to the adjustment**, or
> If **no adjustment is made**, relief is limited to the extent the **unpaid liability** is due to the **non-requesting spouse**.

### Explanation of IRC § 6015(f)

In Revenue Procedure 2000-15, the IRS delineates qualifications necessary to be granted equitable relief under IRC § 6015(f).  Threshold eligibility qualifications are:

> Joint return filed
> Timely filed claim for relief
> Relief not available under other sections of the statute
> There was no transfer of assets between spouses as part of a fraudulent scheme
> Return was not filed with fraudulent intent on the part of the requesting spouse
> Liability remains unpaid
> No disqualified assets transferred to requesting spouse.  If so, relief only available to the extent that the liability exceeds the value of the transferred assets.

Nonetheless, under section 4.03 of Revenue Procedure 2000-15, relief is still possible for requesting spouses who meet the threshold eligibility requirements above, but do not otherwise qualify for relief under any other sections.  This last relief provision is only available where it would be inequitable to hold the requesting spouse liable for the understatement.  Under

this section, **equitable relief** may be granted for underpayments after consideration of local factors (Tier 1) or for underpayments and understatements after consideration of the centralized review factors (Tier 2). If an underpayment does not qualify under the Tier 1 factors, the Tier 2 factors should be considered. All understatement and deficiency cases should consider the Tier 2 factors only.

Equitable relief under the Tier 1 factors will ordinarily be granted under § 6015(f) if all of the following four **local factors** are met:

> Spouse is divorced, separated, widowed, or lived apart of the 12 months prior to the date request filed
> Requesting spouse had a reasonable belief that the tax was paid or was going to be paid the time the spouse signed the return.
> Undue hardship would result if equitable relief is not granted, and
> The unpaid liability at issue is attributable to the non-requesting spouse.

The IRS has authority to grant relief in circumstances where it is clearly inequitable to hold the requesting spouse liable for the tax and where a spouse had reasonable belief that the tax reported on his/her return would be paid. The use of Tier 2 factors, however, should be limited to those cases where it would be **clearly inequitable** to hold the requesting spouse liable for the tax.

Does the taxpayer qualify for equitable relief under IRC § 6015(f)?

In my opinion, no, the taxpayer does not qualify for equitable relief.

When considering equitable relief, the following factors should be considered:

> Martial status
> Economic hardship
> Spousal abuse
> Legal obligation of non-requesting spouse
> No knowledge or reason to know
> Liability attributable to non-requesting spouse

Of the above factors, the ones in the taxpayer's favor are

Marital status
Liability attributable to non-requesting spouse

In my opinion, these factors are outweighed by the fact this year was the second year of withdrawals from the NRS's IRA accounts.  The likelihood that she did not know of the withdrawals from beginning in 1997, that were included on the 1997 tax return, is diminished in the second year.  In addition, the withdrawals were included in the income of the 1998 tax return and the return clearly reflected a balance due In excess of $12,000.  It is clearly not believable that the tax-payer did not know of this liability due.

She further provided no evidence that she believed the tax would be paid at the time the tax return was filed.

**EVALUATION**

Based on the above discussion, the taxpayer has failed to show that she is entitled to relief under either IRC § 6015(b)(c) or (f).  I recommend that the determina-tion of the Innocent Spouse Unit is sustained in 1998.. [Reproduced literally.]

Also on July 22, 2004, the Appeals Office sent to petitioner a "Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015" (notice of determination).  In the notice of determination, the Appeals Office denied petitioner relief under section 6015 with respect to taxable year 1998.  The notice of determination stated in pertinent part:  "For 1998, you do not qualify for relief under IRC section 6015(b)(c) or (f).  [Reproduced literally.]"

As of the time of the trial in this case, Mr. Simon contin-ued to maintain that Mr. Simon's 1998 retirement plan distribu-

tion of $40,420 is not income for 1998 and should not have been included in the 1998 return.

OPINION

We review respondent's denial of relief under section 6015(f) for abuse of discretion.[7] Butler v. Commissioner, 114 T.C. 276, 292 (2000). Petitioner bears the burden of proving that respondent abused respondent's discretion in denying that relief.[8] See Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

Section 6015(f) grants respondent discretion to relieve an individual who files a joint return from joint and several liability with respect to that return. That section provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> > (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

---

[7]The Court's jurisdiction in this case is dependent upon sec. 6015(e)(1). Ewing v. Commissioner, 118 T.C. 494, 498-507 (2002); see also Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000); Butler v. Commissioner, 114 T.C. 276, 289-290 (2000).

[8]We reject petitioner's argument that respondent bears the burden of proving under sec. 6015(f) that petitioner had knowledge that the tax shown due in the 1998 return would not be paid. Petitioner's argument appears to confuse sec. 6015(f) with sec. 6015(c)(3)(C). Respondent has the burden of proof under sec. 6015(c)(3)(C) with respect to whether the requesting spouse had actual knowledge of the item giving rise to the deficiency. Culver v. Commissioner, 116 T.C. 189, 194-196 (2001).

> (2) relief is not available to such individ-
> ual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

In the instant case, the parties agree that relief is not available to petitioner under section 6015(b) or (c), thereby satisfying section 6015(f)(2). They disagree over whether petitioner is entitled to relief under section 6015(f).

In support of her position that she is entitled to relief under section 6015(f), petitioner relies, inter alia, on the testimony of Mr. Simon and her own testimony. We found Mr. Simon's testimony to be questionable and not credible in certain material respects. For example, Mr. Simon testified that he signed petitioner's name on the 1998 return. We did not believe that testimony. We also found Mr. Simon's testimony to be at times confusing, confused, internally inconsistent, and/or inconsistent with certain of the parties' stipulations of fact and certain exhibits attached to those stipulations (stipulated exhibits). We shall not rely on Mr. Simon's testimony to support petitioner's position in this case. We also found petitioner's testimony to be questionable and not credible in certain material respects. For example, petitioner testified that she did not sign the 1998 return. We did not believe that testimony. Moreover, petitioner's testimony that she did not sign the 1998 return is inconsistent with the parties' stipulation that she did

sign that return and certain stipulated exhibits in which she represented to the IRS that she signed that return. A stipulation is to be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. Rule 91(e). The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part except that it may do so where justice requires. Justice does not require the Court to permit petitioner to contradict and attempt to change the parties' stipulation that she signed the 1998 return. We shall not rely on petitioner's testimony to support her position in this case.

Turning now to our consideration of section 6015(f), as directed by that section, respondent has prescribed procedures in Rev. Proc. 2000-15, 2000-1 C.B. 447 (Revenue Procedure 2000-15)[9] that are to be used in determining whether it would be inequitable to find the requesting spouse liable for part or all of the

---

[9]We note that Rev. Proc. 2003-61, 2003-2 C.B. 296 (Revenue Procedure 2003-61), superseded Revenue Procedure 2000-15. Revenue Procedure 2003-61 is effective for requests for relief under sec. 6015(f) which were filed on or after Nov. 1, 2003, and for requests for such relief which were pending on, and for which no preliminary determination letter had been issued as of, that date. Id. sec. 7. Revenue Procedure 2003-61 is not applicable in the instant case. That is because (1) petitioner filed petitioner's Form 8857 on Jan. 9, 2002, and (2) the IRS issued a preliminary determination on Sept. 9, 2002 (i.e., the IRS September 9, 2002 preliminary determination) with respect to that form.

liability in question.  Section 4.01 of Revenue Procedure 2000-15 lists seven conditions (threshold conditions) which must be satisfied before the IRS will consider a request for relief under section 6015(f).  In the instant case, respondent concedes that those conditions are satisfied.  Where, as here, the requesting spouse satisfies the threshold conditions, section 4.01 of Revenue Procedure 2000-15 provides that a requesting spouse may be relieved under section 6015(f) of all or part of the liability in question if, taking into account all the facts and circumstances, the IRS determines that it would be inequitable to hold the requesting spouse liable for such liability.

Where, as here, the requesting spouse satisfies the threshold conditions, section 4.02(1) of Revenue Procedure 2000-15 sets forth the circumstances under which the IRS ordinarily will grant relief to that spouse under section 6015(f) in a case, like the instant case, where a liability is reported in a joint return but not paid.  As pertinent here, those circumstances, which section 4.02 of Revenue Procedure 2000-15 and we refer to as elements, are:

> (a) At the time relief is requested, the requesting spouse is no longer married to * * * the nonrequesting spouse * * *;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid.  The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability.  * * *; and

(c) The requesting spouse will suffer economic hardship if relief is not granted. For purposes of this section, the determination of whether a requesting spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in § 301.6343-1(b)(4) of the Regulations on Procedure and Administration. [Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448.]

(We shall hereinafter refer to the elements set forth in section 4.02(1)(a), (b), and (c) of Revenue Procedure 2000-15 as the marital status element, the knowledge or reason to know element, and the economic hardship element, respectively.)

Section 4.02(2) of Revenue Procedure 2000-15 provides that relief granted under section 4.02(1) of that revenue procedure is subject to the following limitations:

(a) If the return is or has been adjusted to reflect an understatement of tax, relief will be available only to the extent of the liability shown on the return prior to any such adjustment; and

(b) Relief will only be available to the extent that the unpaid liability is allocable to the nonrequesting spouse.

Turning to the three elements set forth in section 4.02(1) of Revenue Procedure 2000-15, the presence of which will ordinarily result in a grant of relief under section 6015(f), in the instant case, (1) respondent concedes that the marital status element is present, (2) the parties dispute whether the knowledge or reason to know element is present, and (3) petitioner concedes that the economic hardship element is not present. In light of petitioner's concession that the economic hardship element is not

present, petitioner does not qualify for relief under section 4.02(1) of Revenue Procedure 2000-15.

The IRS may nonetheless grant relief to petitioner under section 4.03 of Revenue Procedure 2000-15.  That section provides a partial list of positive and negative factors which respondent is to take into account in considering whether to grant an individual relief under section 6015(f).  No single factor is to be determinative in any particular case; all factors are to be considered and weighed appropriately; and the list of factors is not intended to be exhaustive.  Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.

As pertinent here, section 4.03(1) of Revenue Procedure 2000-15 sets forth the following positive factors which weigh in favor of granting relief under section 6015(f):

> (a) <u>Marital status</u>.  The requesting spouse is
> * * * divorced from the nonrequesting spouse.

> (b) <u>Economic hardship</u>.  The requesting spouse
> would suffer economic hardship (within the meaning of
> section 4.02(1)(c) of this revenue procedure) if relief
> from the liability is not granted.

> (c) <u>Abuse</u>.  The requesting spouse was abused by
> the nonrequesting spouse, but such abuse did not amount
> to duress.

> (d) <u>No knowledge or reason to know</u>.  In the case
> of a liability that was properly reported but not paid,
> the requesting spouse did not know and had no reason to
> know that the liability would not be paid. * * *

> (e) <u>Nonrequesting spouse's legal obligation</u>.  The
> nonrequesting spouse has a legal obligation pursuant to
> a divorce decree or agreement to pay the outstanding

liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

(f) Attributable to nonrequesting spouse.  The liability for which relief is sought is solely attributable to the nonrequesting spouse.

(We shall hereinafter refer to the positive factors set forth in section 4.03(1)(a), (b), (c), (d), (e), and (f) of Revenue Procedure 2000-15 as the marital status positive factor, the economic hardship positive factor, the abuse positive factor, the knowledge or reason to know positive factor, the legal obligation positive factor, and the attribution positive factor, respectively.)

We note initially that the parties do not dispute that the marital status positive factor, the knowledge or reason to know positive factor, and the economic hardship positive factor set forth in section 4.03(1)(a), (d), and (b), respectively, of Revenue Procedure 2000-15 are the same as the marital status element, the knowledge or reason to know element, and the economic hardship element set forth in section 4.02(1)(a), (b), and (c), respectively, of that revenue procedure.

With respect to the marital status positive factor set forth in section 4.03(1)(a) of Revenue Procedure 2000-15, respondent concedes that that factor is present in the instant case.

With respect to the economic hardship positive factor set

forth in section 4.03(1)(b) of Revenue Procedure 2000-15, petitioner concedes that that factor is not present in the instant case.

With respect to the abuse positive factor set forth in section 4.03(1)(c) of Revenue Procedure 2000-15, petitioner concedes that that factor is not present in the instant case.

With respect to the knowledge or reason to know positive factor set forth in section 4.03(1)(d) of Revenue Procedure 2000-15, the parties disagree over whether that factor is present in the instant case. Petitioner argues that the knowledge or reason to know positive factor is present. In support of that argument, petitioner asserts on brief:

> Petitioner has stated that during the spouses' [petitioner's and Mr. Simon's] 33 year marriage, she [petitioner] never had opportunity to examine the tax returns prior to filing, and that she completely relied upon Mr. Simon to handle the couple's tax matters. She has consistently stated that on the evening of the filing deadline, Mr. Simon always hurriedly presented a completed return to Petitioner for her immediate signature and, upon that signature, hurried to the post office to affect a timely mailing. This position * * * is clearly stated as part of the administrative record. Petitioner stated this same position at trial. Further, the same position, regarding, in general, the couple's filing habit, was supported by Mr. Simon in his testimony at trial.

> Finally, Respondent, in its determination, even relied upon that same position [of petitioner] as its own basis for determining that Petitioner should have known of the liability. In fact, as part of Respondent's administrative record, the Tax Examiner actually stated that Petitioner did not examine the return. The Tax Examiner did not even consider whether Petitioner actually inquired of payment of the tax. Instead, the

Examiner based her determination on the rationale that Petitioner "should have known something was going on", referring only to the liability itself. * * * there is no evidence that Petitioner had actual knowledge of the underpayment.

* * * it is not reasonable for Petitioner to have known that the tax would not be paid. All of the Petitioner's relevant evidence indicates that Petitioner never even inquired about the tax prior to receiving Respondent's notice of unpaid liability. Further, Respondent has produced no evidence that Petitioner inquired about the tax.

Knowledge of the liability, whether actual or constructive, is not equal to knowledge of whether Petitioner knew or should have known whether the tax would be paid. It is not reasonable for Petitioner to inquire about **payment of an unknown underpayment** if Petitioner did not actually know about the underpayment itself.

* * * * * * *

The facts in this case are similar to those in <u>Wiest v. Commissioner, T.C. Memo 2003-91</u>. In <u>Wiest</u>, * * * As to equitable relief under §6015(f), the determination letter provided that "underpayment was evident at the signing of the joint return. The taxpayer would have had knowledge/reason to know of the underpayment at the time of signing the tax return." * * * The Court held [in <u>Wiest</u>] that Respondent abused his discretion in denying relief under §6015(f) with respect to an amount of tax reported on petitioner's joint return but not paid. [Reproduced literally.]

Respondent argues that the knowledge or reason to know positive factor is not present in the instant case. In support of that argument, respondent asserts on brief:

Despite the fact that the text "AMOUNT YOU OWE [$]12443" was an inch above petitioner's signature on the [1998] return * * *, she claimed ignorance that any tax was owed. If petitioner was unaware that tax was due, she had a duty to inquire whether tax was owed. * * *

This Court has held that when taxpayers fail to fulfill their duty of inquiry, they are ordinarily charged with constructive knowledge of any understatements on their returns. Demirjian v. Commissioner, T.C. Memo. 2004-22; Cohen v. Commissioner, T.C. Memo. 1987-537 * * *. Accordingly, having failed her duty of inquiry, petitioner is charged with constructive knowledge of the tax due on the return. See Castle v. Commissioner, T.C. Memo. 2002-142 n.7; * * *.

     \*     \*     \*     \*     \*     \*     \*

Plaintiff [sic] presented no evidence to the IRS on this factor [knowledge or reason to know positive factor] because she claimed that she was unaware that tax was due when the return was filed. Due to the absence of evidence at the administrative level, this factor does not favor relief. As argued above, petitioner is held to have constructive knowledge of the tax due per return.

In further support of respondent's argument that the knowledge or reason to know positive factor is not present in the instant case, respondent asserts on brief:

Petitioner argues that the determination is arbitrary because the IRS did not consider whether petitioner knew the tax would not be paid. The argument is hollow because petitioner's alleged ignorance of the tax is factually and logically divergent from alleging knowledge that the tax would not be paid. It is illogical to allege that one was ignorant that tax was due but one had knowledge that the tax would not be paid.

Petitioner's argument is flawed because it relies on the supposed failure of the IRS to consider these divergent factual allegations. Petitioner alleged to be ignorant of the tax, which the IRS rejected. Petitioner cannot bemoan that the determination was arbitrary because the IRS did not consider a factual issue that was factually divergent and could not be raised, ie., knowledge regarding payment of the tax.

     \*     \*     \*     \*     \*     \*     \*

At best for petitioner, the knowledge of payment factor is neutral in the analysis due to petitioner's claimed ignorance that any tax was owed. * * * [Reproduced literally.]

We turn first to petitioner's reliance on Wiest v. Commissioner, T.C. Memo. 2003-91. That case is materially distinguishable from the instant case. In Wiest, the taxpayer took the position before the IRS and the Court that he relied on his spouse to file the return in question and to pay the tax shown due in that return and that he was unaware that she had not. In contrast, in the instant case, petitioner took the position before the IRS, and takes the position before the Court, that at the time she signed the 1998 return she did not know that that return showed tax due and that therefore at that time she could not have known that Mr. Simon would not pay any such tax. Thus, unlike the taxpayer in Wiest, petitioner did not claim before the IRS, and does not claim before the Court, that she relied on Mr. Simon to pay the tax shown due in the 1998 return. In addition, unlike the instant case, in Wiest, the Court found that the spouse of the taxpayer deceived the taxpayer with respect to the filing of the return in question and the payment of the tax shown due in that return. Moreover, unlike the instant case, in Wiest, the IRS based its determination that the taxpayer was not entitled to relief under section 6015(f) principally on its conclusions that the unpaid liability in question was not solely attributable to the taxpayer's spouse and that the taxpayer had

knowledge or reason to know of that unpaid liability. In concluding that the taxpayer had knowledge or reason to know of the unpaid liability in question, the IRS equated the taxpayer's knowledge or reason to know that an amount of tax was shown due in the return in question with knowledge or reason to know that such amount shown due would not be paid. In contrast, in the instant case, the Appeals Office based its determination that petitioner is not entitled to relief under section 6015(f) on its conclusions that the unpaid 1998 liability was not attributable solely to Mr. Simon, that "It is clearly not believable that the taxpayer [petitioner] did not know of this liability due", and that petitioner "provided no evidence that she believed the tax would be paid at the time the tax return was filed"[10] as well as on the absence of any (1) economic hardship, (2) spousal abuse,

---

[10]The Appeals Office stated in the Appeals Office memorandum:

> this year [1998] was the second year of withdrawals from the NRS's [nonrequesting spouse's, i.e., Mr. Simon's] IRA accounts. The likelihood that she [petitioner] did not know of the withdrawals from beginning in 1997, that were included on the 1997 tax return, is diminished in the second year. In addition, the withdrawals were included in the income of the 1998 tax return and the return clearly reflected a balance due In Excess of $12,000. It is clearly not believable that the taxpayer did not know of this liability due.
>
> She [petitioner] further provided no evidence that she believed the tax would be paid at the time the tax return was filed. [Reproduced literally.]

and (3) legal obligation of Mr. Simon to pay such liability. On the record before us, we find that petitioner's reliance on Wiest v. Commissioner, supra, is misplaced. On that record, we reject petitioner's arguments in reliance on that case.

We turn now to whether petitioner has carried her burden of establishing that the knowledge or reason to know positive factor is present in the instant case. In support of her position for relief under section 6015(f), petitioner chose to present her case to the IRS and to the Court by claiming that she did not know and had no reason to know that there was tax shown due in the 1998 return. Petitioner must bear the consequences of that choice. On the record before us, we have serious reservations about petitioner's contention that she did not know that the 1998 return showed tax due because she was "hurried" when she signed that return. Nonetheless, assuming arguendo that we were to accept such a contention, on the instant record, we find that, by signing the 1998 return, petitioner is charged with constructive knowledge of, inter alia, the tax shown due in that return. See Park v. Commissioner, 25 F.3d 1289, 1299 (5th Cir. 1994), affg. T.C. Memo. 1993-252; see also Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228. Having found that at the time petitioner signed the 1998 return she had constructive knowledge of the tax shown due in that return, we further find that petitioner should have inquired about whether

such tax shown due would be paid.  It would be inequitable to allow petitioner to turn a blind eye to the tax shown due in the 1998 return.  The amount of such tax shown due was large enough as to put her on notice that further inquiry should be made as to whether it would be paid.  She failed to do so.  She thus failed to present any evidence to the IRS and to the Court with respect to whether the tax shown due in the 1998 return would be paid. On the record before us, we find that petitioner has failed to carry her burden of establishing that the knowledge or reason to know positive factor is present in the instant case.

With respect to the legal obligation positive factor set forth in section 4.03(1)(e) of Revenue Procedure 2000-15, petitioner concedes that there is no legal obligation for Mr. Simon to pay any tax due for taxable year 1998.  We find that petitioner concedes that that factor is not present in the instant case.

With respect to the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15, petitioner concedes that the unpaid 1998 liability is not solely attributable to Mr. Simon.[11]  We find that petitioner concedes that the attribution positive factor is not present in the instant case.

Turning to the negative factors weighing against granting

---

[11]Petitioner does not dispute respondent's determination that approximately 16 percent of the tax due for taxable year 1998 is attributable to petitioner.

relief under section 6015(f) set forth in section 4.03(2) of Revenue Procedure 2000-15, as pertinent here, those factors are:

(a) <u>Attributable to the requesting spouse</u>. The unpaid liability * * * is attributable to the request- ing spouse.

(b) <u>Knowledge, or reason to know</u>. A requesting spouse knew or had reason to know * * * that the re- ported liability would be unpaid at the time the return was signed. This is an extremely strong factor weigh- ing against relief. Nonetheless, when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid * * *.

(c) <u>Significant benefit</u>. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * *.

(d) <u>Lack of economic hardship</u>. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from liability is not granted.

(e) <u>Noncompliance with federal income tax laws</u>. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>. The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

(We shall hereinafter refer to the negative factors set forth in section 4.03(2)(a), (b), (c), (d), (e), and (f) of Revenue Procedure 2000-15 as the attribution negative factor, the knowl- edge or reason to know negative factor, the significant benefit negative factor, the economic hardship negative factor, the tax

law noncompliance negative factor, and the legal obligation
negative factor, respectively.)

We note initially that the parties do not dispute that the
knowledge or reason to know negative factor, the economic hard-
ship negative factor, and the legal obligation negative factor
set forth in section 4.03(2)(b), (d), and (f), respectively, of
Revenue Procedure 2000-15 are the opposites of the knowledge or
reason to know positive factor, the economic hardship positive
factor, and the legal obligation positive factor set forth in
section 4.03(1)(d), (b), and (e), respectively, of that revenue
procedure.  We also note that the parties do not dispute that the
attribution negative factor set forth in section 4.03(2)(a) of
Revenue Procedure 2000-15 is essentially the opposite of the
attribution positive factor set forth in section 4.03(1)(f) of
that revenue procedure.[12]

We have found above that petitioner has failed to carry her
burden of establishing that the knowledge or reason to know
positive factor set forth in section 4.03(1)(d) of Revenue
Procedure 2000-15 is present in the instant case and that peti-

---

[12]We do not believe that those two factors are exactly
opposite because the attribution negative factor does not contain
the word "solely" that appears in the attribution positive
factor.  Nonetheless, we conclude that respondent's use of the
word "solely" in describing the attribution positive factor but
not in describing the attribution negative factor does not affect
our findings and conclusions in the instant case with respect to
those factors.

tioner concedes that the economic hardship positive factor set forth in section 4.03(1)(b) of that revenue procedure is not present in the instant case. On the instant record, we further find that petitioner has failed to carry her burden of establishing that the knowledge or reason to know negative factor set forth in section 4.03(2)(b) of Revenue Procedure 2000-15 is not present in the instant case and that petitioner concedes that the economic hardship negative factor set forth in section 4.03(2)(d) of that revenue procedure is present in the instant case.

With respect to the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15, we have found that petitioner concedes that the unpaid 1998 liability is not solely attributable to Mr. Simon. Respondent concedes that a significant portion (approximately 84 percent) of that liability is attributable to Mr. Simon. On the record before us, we find that a significant portion of the liability for taxable year 1998 is not attributable to petitioner.

With respect to the significant benefit negative factor set forth in section 4.03(2)(c) of Revenue Procedure 2000-15, respondent does not dispute that that factor is not present in the instant case.

With respect to the tax law noncompliance negative factor set forth in section 4.03(2)(e) of Revenue Procedure 2000-15, respondent does not dispute that that factor is not present in

the instant case.

With respect to the legal obligation negative factor set forth in section 4.03(2)(f) of Revenue Procedure 2000-15, we have found that, because petitioner concedes that Mr. Simon does not have a legal obligation to pay any tax due for 1998, petitioner concedes that the legal obligation positive factor set forth in section 4.03(1)(e) of that revenue procedure is not present in the instant case. We have also found that there is no separate legal obligation, such as a divorce decree or a property settlement, that requires petitioner to pay any such tax due.[13] On the record before us, we find that the legal obligation negative factor is not present in the instant case.

On the record before us, we find that petitioner has failed to carry her burden of establishing any other factors that weigh in favor of granting relief under section 6015(f) and that are not set forth in sections 4.02(1) and 4.03(1) of Revenue Procedure 2000-15.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of showing that respondent abused respondent's discretion in denying her relief under section 6015(f) with respect to the unpaid 1998 liability.

---

[13]Division of the marital assets of petitioner and Mr. Simon remains to be adjudicated by the North Carolina courts.

We have considered all of the parties' arguments and contentions that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.