T.C. Memo. 2007-48

UNITED STATES TAX COURT

DIANA VAN ARSDALEN, f.k.a. DIANA MURRAY, Petitioner, AND
STANLEY DAVID MURRAY, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1195-04.               Filed March 5, 2007.

<u>Jack B. Schiffman</u>, for petitioner.

Stanley David Murray, pro se.

<u>Rachael J. Zepeda</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Chief Judge</u>:  Respondent determined that petitioner

is not entitled to relief under section 6015(b), (c), or (f)[1] for

_____

[1]  Unless otherwise provided, section references are to the
Internal Revenue Code as amended.  Rule references are to the Tax
                                              (continued...)

1992, 1993, 1994, 1995, or 1996 (the years in issue). Petitioner petitioned this Court under section 6015(e)(1) and contends she is eligible for relief under section 6015(f). Petitioner's former husband, Stanley Murray (intervenor), intervened and supports her claim.[2] See Rule 325(b). We hold that petitioner is entitled to relief under section 6015(f) for the years in issue.[3]

Based on Billings v. Commissioner, 127 T.C. 7 (2006), and Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002) and vacating 122 T.C. 32 (2004), we dismissed this case for lack of jurisdiction by order dated October 2, 2006. See also Bartman v. Commissioner, 446 F.3d 785 (8th Cir. 2006), affg. in part and vacating in part T.C. Memo. 2004-93. However, Congress subsequently reinstated our jurisdiction to review the Commissioner's determinations under section 6015(f) with respect to tax liability remaining unpaid on or after December 20, 2006. Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061. The parties

---

[1](...continued)
Court Rules of Practice and Procedure.

[2] We previously held that Mr. Murray may intervene to support petitioner's claim for relief. Van Arsdalen v. Commissioner, 123 T.C. 135 (2004).

[3] Respondent contends that we may consider only the administrative record in deciding this case. See discussion below at par. D, p. 20.

reported to the Court that as of December 20, 2006, unpaid taxes remain in this case. On December 27, 2006, we vacated our order dismissing this case for lack of jurisdiction.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioner and Intervenor

Petitioner resided in Scottsdale, Arizona, when she filed her petition. Petitioner and intervenor (collectively, the Murrays) were married in September 1988 and were divorced in June 1998. They had two children.

Petitioner has a high school education. She was employed full time for several years before she married intervenor when she was 30. She worked full time until January 1990. The Murrays had their first child in February 1990. Petitioner occasionally worked part time from then until they separated in 1998.

Intervenor was a self-employed practicing lawyer most of the time he was married to petitioner.

Intervenor was the family's primary earner and handled the family finances. He wrote the majority of checks to pay the family living expenses. The Murrays did not live well, and money was always tight. In 1993, intervenor submitted an offer-in-compromise with respect to years not identified in the record.

Petitioner did not know that intervenor filed an offer-in-compromise in 1993.

B.    The Murrays' Joint Federal Income Tax Returns

Intervenor was responsible for making estimated payments of Federal income tax relating to income from his law practice.  He did not make these payments, even though he told petitioner that he was doing so.

The Murrays filed joint Federal income tax returns for 1992 through 1996.  Intervenor gave income tax returns to petitioner to sign each year around April 14.  Petitioner reviewed those returns, on which the Murrays reported tax due (including additions to tax for underpayment of estimated tax) of $11,131, $14,933, $10,263, $2,114, and $6,252 for 1992, 1993, 1994, 1995, and 1996, respectively.  Petitioner knew that their taxes were not being fully paid when the returns were filed, but intervenor assured her that he would fully pay those taxes from his future law practice earnings.

C.    Events After the Years in Issue

The Murrays sold their home in mid-1997, and respondent applied the proceeds ($18,818.96) to their tax liability for 1988 on June 16, 1997.

The Murrays filed for bankruptcy under chapter 13 in September 1997.  The bankruptcy case was dismissed on August 5, 1998.  No taxes were discharged in that proceeding.

The Murrays were divorced in June 1998. The property settlement, which was included in the Murrays' divorce decree, provided, inter alia, that intervenor was solely responsible for paying their community debts. This included their joint tax liability.

After her divorce from intervenor, petitioner had custody of her and intervenor's two children, found new employment, married Mark Van Arsdalen (Mr. Van Arsdalen), and had a third child. Petitioner has complied with tax laws since 1997.

D.   Petitioner's Request for Relief Under Section 6015

On April 3, 2001, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief, in which petitioner sought relief from joint liabilities of tax under section 6015(b), (c), and (f) for 1989 and 1991 through 1996. Respondent granted petitioner's request for relief for 1989 and 1991 on December 17, 2001. On October 24, 2003, respondent determined that petitioner was not qualified for relief under section 6015 for 1992 through 1996.

E.   Petitioner's Finances

In May 2005, petitioner and intervenor owed tax, penalties, and interest in the amount of $110,114.72. At that time, petitioner was about 47 years old and had about $63,000 in her section 401(k) retirement plan account and about $45,000 in

credit card debt.  Intervenor paid $560 per month in child support payments to petitioner.

Petitioner's wages in 2001 were $55,217.  On May 31, 2001, petitioner gave respondent a list of six monthly living expenses totaling about $2,300:  Mortgage payment, $1,100; utilities, $200 to $300; food, $400 to $500; car expenses, $375; car insurance, $150; and clothing (no amount stated).  Petitioner's monthly income in 2001 (including child support payments) was $4,184.

Petitioner's wages were about $58,000 in 2002.  Petitioner and Mr. Van Arsdalen's total income (including deferred compensation not further described in the record, and gross proceeds from the sale of stock by Mr. Van Arsdalen) was $86,260 in 2001, $120,374 in 2002, and $113,183 in 2003.

Petitioner gave respondent a list dated June 30, 2003, of eight of her monthly living expenses for 2003 totaling about $2,900:  Child care, $400; car payment, $500; car insurance, $100; mortgage, $1,200; utilities, $300 to $350; telephone, $100; health insurance, $220; and dental insurance, $50.

Mr. Van Arsdalen changed jobs around February 2004, and his income increased slightly.  In 2005, petitioner estimated that the cost of some of the items she had reported to respondent in 2001 and 2003 had increased, that her monthly clothing expenses were $300, and that she spent $100 per month for medical expenses for one of her children.  In 2005, petitioner also had monthly

expenses totaling at least $1,600 for several items she had not listed for 2001 or 2003, such as flood insurance ($125), payments on a home equity loan ($250), credit card payments ($900), dry cleaning ($80), personal care services (hair and nails) ($115-$140), telephone, cable, and Internet service ($160), Federal income and Social Security taxes, and State income tax.

In 2005, petitioner had no collectibles, art, stock, annuities, life insurance with cash value, savings bonds, savings account, or any other accounts with financial institutions other than her section 401(k) retirement account.

As of January 7, 2003, petitioner and intervenor owed tax, penalties, and interest in the amount of $27,626.39 for 1992, $34,170.77 for 1993, $21,804.15 for 1994, $2,719.74 for 1995, and $11,351.78 for 1996 for a total of $97,668.83.

OPINION

A.   Background

If husband and wife file a joint Federal income tax return, they are jointly and severally liable for the tax due.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, a spouse may qualify for relief from joint liability under section 6015(b) or (c) if various requirements are met. The parties agree that petitioner does not qualify for relief under section 6015(b) or (c).

If relief is not available under section 6015(b) or (c), the Commissioner may relieve an individual of liability for any unpaid tax if, taking into account all the facts and circumstances, it would be inequitable to hold the individual liable.  Sec. 6015(f).  This Court has jurisdiction to review a denial of equitable relief under section 6015(f).  Sec. 6015(e).

We review the Commissioner's denial of relief for abuse of discretion.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  The taxpayer seeking relief has the burden of proof.  Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  To prevail, the taxpayer must show that the Commissioner's determination was arbitrary, capricious, or without sound basis in law or fact.  Butler v. Commissioner, supra at 291-292.

B.  Revenue Procedure 2000-15

The Commissioner promulgated a list of factors in Rev. Proc. 2000-15, sec. 4, 2000-1 C.B. 447, 448-449, that the Commissioner considers in determining whether to grant equitable relief under section 6015(f).[4]  First, the Commissioner will not grant relief

---

[4]  Respondent's determination was subject to Rev. Proc. 2000-15, 2000-1 C.B. 447.  Rev. Proc. 2000-15, supra, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, for requests for relief under sec. 6015(f) that either were filed on or after Nov. 1, 2003, or were pending on Nov. 1, 2003, and for which no preliminary determination letter had been issued as of Nov. 1, 2003.

unless seven threshold conditions have been met: (1) The taxpayer must have filed joint returns for the taxable years for which relief is sought; (2) the taxpayer does not qualify for relief under section 6015(b) or (c); (3) the taxpayer must apply for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the taxpayer; (4) the liability must remain unpaid; (5) no assets were transferred between the spouses filing the joint returns as part of a fraudulent scheme by such spouses; (6) there were no disqualified assets transferred to the taxpayer by the nonrequesting spouse; and (7) the taxpayer did not file the returns with fraudulent intent. Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent concedes that petitioner meets these conditions.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449, lists two factors which, if true, the Commissioner treats as favoring relief: (1) The taxpayer is separated or divorced from the nonrequesting spouse; and (2) the taxpayer was abused by the nonrequesting spouse. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 449, also lists two facts which, if true, the Commissioner treats as not favoring relief: (3) The taxpayer received significant benefit from the unpaid liability or the item giving

rise to the deficiency; and (4) the taxpayer has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates. See Ferrarese v. Commissioner, T.C. Memo. 2002-249.

The Commissioner generally does not consider the absence of factors (1), (2), (3), or (4) in determining whether to grant relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449. However, on the basis of caselaw deciding whether it was equitable to relieve a taxpayer from joint liability under former section 6013(e)(1)(D), we consider the fact that a taxpayer did not significantly benefit from the unpaid liability as favoring equitable relief for that taxpayer. See Belk v. Commissioner, 93 T.C. 434, 440-441 (1989); Ferrarese v. Commissioner, supra; Foley v. Commissioner, T.C. Memo. 1995-16; Robinson v. Commissioner, T.C. Memo. 1994-557; Klimenko v. Commissioner, T.C. Memo. 1993-340; Hillman v. Commissioner, T.C. Memo. 1993-151.

Rev. Proc. 2000-15, sec. 4.03, lists the following four factors which, if true, the Commissioner treats as favoring relief and which, if not true, the Commissioner treats as not favoring relief: (5) The taxpayer would suffer economic hardship if relief were denied; (6) in the case of a liability that was properly reported but not paid, the taxpayer did not know and had no reason to know that the liability would not be paid; (7) the

liability for which relief is sought is attributable to the nonrequesting spouse; and (8) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability (weighs against relief only if the requesting spouse has the obligation).  Rev. Proc. 2000-15, sec. 4.03, also states that no single factor is controlling, all factors will be considered and weighed appropriately, and the list of factors in Rev. Proc. 2000-15, sec. 4, is not exhaustive.

For reasons discussed next, we conclude that none of the factors listed in Rev. Proc. 2000-15, supra, supports respondent's determination in this case, and additional factors discussed below favor relief.

C.    Application of the Factors Listed in Rev. Proc. 2000-15

1.    Petitioner's Marital Status

Petitioner was divorced from intervenor when she sought relief.  This factor favors petitioner.

2.    Spousal Abuse

Petitioner testified that there was no abuse in her former marriage.  Respondent determined that this factor is neutral.  We agree with respondent's determination on this point.

3.    Significant Benefit

Respondent concedes that petitioner did not significantly benefit from intervenor's underpayment of tax for 1992 through 1996.  This factor favors petitioner.  See Belk v. Commissioner,

supra; <u>Ferrarese v. Commissioner</u>, <u>supra</u>; <u>Foley v. Commissioner</u>, <u>supra</u>; <u>Robinson v. Commissioner</u>, <u>supra</u>; <u>Klimenko v. Commissioner</u>, <u>supra</u>; <u>Hillman v. Commissioner</u>, <u>supra</u>.

4.  <u>Compliance With Tax Laws</u>

Petitioner complied with Federal income tax laws after 1996, the last of the years to which petitioner's request for relief relates.  This factor is neutral.

5.  <u>Economic Hardship</u>

Respondent determined and contends that petitioner would not suffer economic hardship if relief were not granted.  We disagree.

a.  <u>Background</u>

A factor treated by the Commissioner as weighing in favor of relief under section 6015(f) is that paying the taxes owed would cause the requesting spouse to suffer economic hardship.  Rev. Proc. 2000-15, sec. 4.03(1)(b), 2000-1 C.B. at 448.  Respondent considers the taxpayer to suffer economic hardship if paying the tax would prevent the taxpayer from paying reasonable basic living expenses.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; Rev. Proc. 2000-15, secs. 4.02(1)(c) and 4.03(1)(b), 2000-1 C.B. at 448-449.

The Commissioner considers any information provided by the taxpayer in determining a reasonable amount for basic living expenses, including the following:  (1) The taxpayer's age,

employment status and history, ability to earn, and number of
dependents; (2) the amount reasonably necessary for food,
clothing, housing, medical expenses, transportation, current tax
payments, alimony, child support, or other court-ordered
payments, and expenses necessary to the taxpayer's production of
income; (3) cost of living in the geographic area where the
taxpayer resides; (4) the amount of property exempt from the levy
that is available to pay the taxpayer's expenses; (5) any
extraordinary circumstances; and (6) any other factor that the
taxpayer claims bears on economic hardship and brings to the
Commissioner's attention.  Sec. 301.6343-1(b)(4)(ii), Proced. &
Admin. Regs.

     b.   <u>Petitioner's Income and Expenses</u>

In recommending that petitioner not be granted relief under
section 6015(f), the Appeals officer said that petitioner had
$1,764 of disposable income per month in 2001, and that her
income had increased since then.  That amount roughly equals the
excess of petitioner's monthly income (including child support)
in 2001 of $4,184 over the six monthly expenses petitioner listed
on May 31, 2001.

Respondent concluded that petitioner's living expenses are
much lower than they actually are, apparently by erroneously
assuming that the six expenses petitioner listed in 2001 were her
only expenses.  Respondent did not consider several additional

expenses petitioner reported to respondent in 2003. Based on her submissions to respondent in 2001 and 2003, petitioner's monthly expenses in 2003 included: Mortgage payment, $1,200; utilities, $300 to $350; food, $400 to $500 (in 2001); car payment, $500; car insurance, $100; car operating expenses (no amount given[5]); clothing (no amount given); child care, $400; phone, $100; health insurance, $220; and dental insurance, $50. These monthly expenses totaled about $3,300. Respondent's estimate included nothing for out-of-pocket medical expenses for one of her children, or Federal or State income taxes, Social Security tax, or clothing expenses about which she told respondent in her June 30, 2003, statement. In 2005, she estimated that those expenses were $300 and $100 per month, respectively. She also had expenses in 2005 for several other items, such as Federal income tax and Social Security taxes, State income tax, flood insurance, a home equity loan, car repairs, dry cleaning and personal care services, and cable, telephone, and Internet service.

c. Petitioner's Retirement Fund

Petitioner had a balance of about $63,000 in her section 401(k) retirement plan account in 2005. Section 301.6343-1(b)(4)(ii)(A) through (F), Proced. & Admin. Regs.,

---

[5] Petitioner said that in 2003 her car payments were $500 and car insurance was $100. Giving the most common meaning to words, those two categories do not include car expenses, which in 2001 she estimated to be $375.

provides that the Commissioner will consider, inter alia, the taxpayer's age, employment status and history, ability to earn, and number of dependents, and any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the Commissioner. We believe these provisions envision consideration of a taxpayer's pension needs where appropriate. In 2003, petitioner was around age 45, had three children, and had a modest income. Under these conditions, we believe that she has a reasonable need to retain her modest retirement account.[6]

### d. Conclusion

Petitioner and intervenor owed about $110,000 in tax, penalties, and interest in May 2005, a very substantial sum given her financial situation. We conclude that this factor favors petitioner.

---

[6] In George v. Commissioner, T.C. Memo. 2004-261, we said the taxpayer could liquidate part of her IRA to pay taxes. George is distinguishable from the instant case because the taxpayer in that case had no expenses for dependents and would have had about $100,000 in her IRA after paying tax of about $200,000. Petitioner's modest pension fund could be completely liquidated if it were used to pay the tax owed.

Shanbaum v. United States, 32 F.3d 180 (5th Cir. 1994), holding that an ERISA pension is not exempt from levy, has no bearing here because the Government's authority to levy is not at issue.

6. <u>Knowledge or Reason To Know</u>

a. <u>Background</u>

In determining whether a taxpayer in an underpayment case qualifies for equitable relief under section 6015(f), respondent considers whether the requesting spouse knew or had reason to know that the reported liability would be unpaid. This factor favors relief if the taxpayer reasonably believed when the return was filed that the liability would be paid by the taxpayer's spouse. See <u>Wiest v. Commissioner</u>, T.C. Memo. 2003-91 (the taxpayer reasonably believed taxes owed would be paid by spouse). Respondent determined and contends that petitioner knew or had reason to believe that the tax would not be paid. We disagree for reasons stated next.

b. <u>The Offer-in-Compromise</u>

Respondent contends that an offer-in-compromise submitted to respondent in 1993 by intervenor gave petitioner reason to know the taxes were not being paid. We disagree. The offer-in-compromise is not in the record, and there is nothing to support respondent's contention that petitioner knew about it. We conclude that petitioner did not know that intervenor filed an offer-in-compromise in 1993.

c. <u>Petitioner and Intervenor's Tax Returns</u>

Respondent contends the fact that petitioner signed and filed balance due returns shows that she did not reasonably

believe the unpaid tax reported on the returns would be paid. Respondent contends that petitioner's reliance on intervenor's assurances that he would pay all taxes due was unreasonable because intervenor had underpaid his estimated taxes and the Murrays habitually owed money that they could not pay.  We disagree.  Intervenor intentionally misled petitioner into thinking he was fulfilling their tax obligations.

Petitioner had a high school education and stayed home to raise their children during most of the years she was married to intervenor.  Respondent apparently did not consider petitioner's education or lack of involvement in family finances, even though (1) all facts and circumstances are to be considered in applying section 6015(f), sec. 6015(f)(1); and (2) a taxpayer's level of education and lack of involvement in family finances are well-established considerations in determining what a taxpayer knows or had reason to know, Bliss v. Commissioner, 59 F.3d 374, 378 (2d Cir. 1995), affg. T.C. Memo. 1993-390; Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522.

We conclude that the record shows that at the times the returns were filed petitioner expected intervenor to pay the Murrays' taxes after their returns were filed.

d.    The Lien on the Murrays' House and the Bankruptcy

Respondent contends that petitioner knew or had reason to know intervenor would not pay his taxes because respondent took

the proceeds on the sale of the Murrays' house in mid-1997, and petitioner and intervenor filed for bankruptcy in September 1997. We disagree.  Intervenor misled petitioner about his intentions to pay their taxes.  Any knowledge about intervenor's intent to pay his taxes that petitioner gleaned from her discovery of the tax liens on the Murrays' house and their bankruptcy filing occurred after the Murrays filed the last of the returns for the years in issue in April 1997.[7]

### e.  Conclusion

We conclude that this factor favors petitioner.

### 7.  Whether the Underpayment of Tax Is Attributable to Intervenor

Respondent concedes that the underpaid tax is solely attributable to intervenor.  This factor favors petitioner.

### 8.  Legal Obligation To Pay Tax

The fact that the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability favors granting relief.  Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.  In the property settlement signed in June 1998, intervenor agreed to pay community debts, which include the taxes from which petitioner seeks relief from liability.

---

[7]  The administrative record does not show that respondent took the proceeds on the sale of the Murray's house in mid-1997 before the Murrays filed their 1996 tax return around Apr. 15, 1997.

Respondent contends that, even if the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding tax, this factor does not favor petitioner because she had reason to know when she signed the divorce decree that intervenor would not pay the tax due.  We disagree. Respondent provides no grounds to suggest that the settlement agreement is not fully enforceable against intervenor by petitioner.  We conclude that this factor favors petitioner.

9.  Other Factors

The list of factors in Rev. Proc. 2000-15, sec. 5, 2000-1 C.B. at 448-449, is not intended to be exhaustive.  Id. Petitioner did not participate in any wrongdoing.  The problem originated with intervenor, who failed to make tax payments while misrepresenting to petitioner that he would make those payments as required.  Equitable relief is more likely to be appropriate where concealment, overreaching, or other wrongdoing on the part of the nonrequesting spouse is present.  Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.

D.  Conclusion

Petitioner has presented a strong case for relief from joint liability under factors promulgated by the Commissioner in Rev. Proc. 2000-15, sec. 4.03.[8]  All of the factors either favor

_____

[8] The Commissioner ordinarily will grant relief from joint liability under sec. 6015(f) where a liability reported in a
(continued...)

petitioner or are neutral.  We conclude that respondent's denial of relief under section 6015(f) was an abuse of discretion, and that, on the basis of all the facts and circumstances, it would be inequitable to hold petitioner liable for the underpayment of taxes for 1992-96.

A final procedural note.  Respondent contends that we may consider only the administrative record in deciding this case. We stated our Court's position on that issue at <u>Ewing v. Commissioner</u>, 122 T.C. 32, 44 (2004) (In exercising our jurisdiction under section 6015(e)(1)(A) "to determine" whether a taxpayer is entitled to relief under section 6015(f), it is appropriate for this Court to consider the evidence admitted at trial), vacated on other grounds 439 F.3d 1009 (9th Cir. 2006). However, we need not consider respondent's contention further because it is clear that petitioner prevails (and that all

---

[8](...continued)
joint return is unpaid and the requesting spouse:  (1) Is no longer married to the nonrequesting spouse; (2) had no knowledge or reason to know that the tax would not be paid; and (3) will suffer economic hardship if relief is not granted.  Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448.  Those circumstances are present here; however, for completeness, we have considered all of the facts and circumstances.  Sec. 6015(f)(1).

factors favor petitioner or are neutral) whether or not our determination is limited to matter contained in respondent's administrative record.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.